ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
|! This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Thomas Robert Schmidt, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Count I — The May Matter
In February 2009, Sherry Ann May hired respondent on a contingent fee basis to represent her in a personal injury case arising from a February 7, 2009 insect infestation of her rented apartment. During the time that respondent represented Ms. May, her living situation was not stable, and at one point she moved into a shelter. As a result, respondent had difficulty maintaining appropriate contact and communication with Ms. May, and it was not until April 2010 that he was able to obtain a properly executed pauper affidavit from her. Respondent filed Ms. May’s lawsuit on May 21, 2010, by which time her personal injury claim had prescribed.
The ODC alleged respondent’s conduct violated Rules 1.1(a) (failure to provide competent representation to a client), 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7(a) (conflict of interest), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of ^Professional Conduct. The ODC also alleged that respondent lost or misplaced a bag of dead insects that was to be used as evidence in Ms. May’s case, thereby violating Rule 1.15 (safekeeping property of clients or third persons).
Count II — The Dilapi Matter
In March 2009, Mary Dilapi hired respondent to represent her in a community property matter. By mid-2010, the case had reached a point where respondent believed that continued litigation was not in Ms. Dilapi’s best interests, but rather than withdraw from the representation, he simply stopped returning his client’s phone calls and ceased to work on her case.
The ODC alleged respondent’s conduct violated Rules 1.2, 1.3, and 8.4(d) of the Rules of Professional Conduct.
Count III — The Bartholomew Matter
In April 2009, Viola Bartholomew retained respondent to obtain clear title to her late husband’s crypt in St. Louis Cemetery No. 3. Mrs. Bartholomew paid respondent an advanced hourly fee and cost deposit of $1,500.[1] Respondent deposited these funds into his operating account, rather than his client trust account. *910 Thereafter, he failed to provide Mrs. Bartholomew with periodic accountings, either for earned fees or expended costs, and he did not keep or maintain financial records. He also failed to properly respond to Mrs. Bartholomew’s requests for an accounting and a refund, and failed to return the title documents for the crypt, which he had provided to the Archdiocese of New Orleans in the course of his representation of Mrs. Bartholomew.
[¡¡The ODC alleged respondent’s conduct violated Rules 1.4, 1.5(f) (fee arrangements), 1.15, and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.

Count IV— The Ball Matter

In October 2009, Theresa Ball retained respondent to render legal services in connection with her father’s succession. Ms. Ball paid respondent an advanced hourly fee and cost deposit of $1,015. Respondent deposited these funds into his operating account, rather than his client trust account. Thereafter, he failed to provide Ms. Ball with periodic accountings, either for earned fees or expended costs, and he did not keep or maintain financial records. He also failed to promptly respond to Ms. Ball’s requests for an accounting and a refund. In addition, Ms. Ball had provided respondent with original documents and correspondence to be used as evidence in the succession matter; however, respondent left these documents in his automobile, where they were destroyed in a rainstorm. Finally, respondent failed to provide the ODC with a copy of his client’s entire file, despite his assurances that he would do so.
The ODC alleged respondent’s conduct violated Rules 1.4, 1.5(f), 1.15, 1.16(d), and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
In August 2012, the ODC filed four counts of formal charges against respondent. Respondent answered the formal charges, admitting some misconduct while denying other misconduct. The matter then proceeded to a formal hearing on the merits conducted by the hearing committee in December 2012.

\ ¿Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made a number of factual findings consistent with the facts as set forth above. The committee also found as follows:
The May Matter — Ms. May testified that she placed numerous phone calls to respondent that went unreturned. Respondent testified that he has no recollection of having received phone messages or phone calls from Ms. May, but he did acknowledge the difficulty he had in communicating with her after she moved into a shelter. He also acknowledged that he met with Ms. May on at least two occasions before her personal injury claim prescribed.
The Dilapi Matter — After representing Ms. Dilapi for a little more than a year, respondent concluded that it was no longer in her best interests to go forward with her case. Nevertheless, respondent did not withdraw from the representation.
The Bartholomew Matter — Respondent was paid an advanced hourly fee and cost deposit of $1,500 to represent Mrs. Bartholomew. Respondent should have deposited these funds into his trust account, but instead he deposited them into his operating account. Respondent admitted that he failed to communicate with Mrs. Bartholomew and failed to accomplish the goal of the representation, namely securing clear title to the crypt in which Mrs. Bartholo *911 mew’s husband is buried. He also failed to safeguard and return the original title documents to the crypt, having turned over those documents to the Archdiocese of New Orleans. Respondent failed to return the unearned portion of the fee to Mrs. Bartholomew, and failed to place the disputed or unearned portion of the fee into his trust account. He has offered to submit the matter to fee dispute arbitration.
The Ball Matter — Respondent was paid an advanced hourly fee and cost deposit of $1,015 to represent Ms. Ball. Respondent should have deposited these funds into his trust account, but instead he deposited them into his operating | ¡¡account. Respondent did not refund any portion of Ms. Ball’s fee until after she filed a disciplinary complaint against him.
Based on these facts, the committee determined that respondent violated Rules 1.1, 1.2, 1.3, 1.4, 1.5(f), 1.15(a), 1.16(d), and 8.1. The committee did not find sufficient evidence to support a violation of Rules 1.7(a) or 8.4(d) in the May matter, and Rules 1.2(c) or 8.4(d) in the Dilapi matter.
After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee suggested that respondent’s conduct was either negligent or knowing, and caused injury or potential injury. The committee determined that the applicable baseline sanction in this matter ranges from suspension to disbarment.
The committee found the following aggravating factors are present: a prior disciplinary record (a May 2011 diversion), a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law (admitted 1999). The committee found the following mitigating factors are present: absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse.
Based on these findings, the committee recommended respondent be suspended from the practice of law for two years, with all but one year and one day deferred. The ODC objected to the recommended sanction as too lenient.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are not manifestly erroneous, with two exceptions relating to the Bartholomew matter. First, although the committee found that respondent “failed to safeguard” the original title to the crypt, the record indicates that the Archdiocese of New Orleans required respondent to surrender the original title to the Archdiocese to complete the title |fitransfer that Mrs. Bartholomew sought. As he followed the Archdiocese’s instructions in order to complete his client’s objectives, it cannot be said that respondent failed to safeguard his Ghent’s property. Second, the board clarified the committee’s finding that the fee paid by Mrs. Bartholomew was an advance payment of fees that should have been deposited in' respondent’s trust account.
The board likewise determined that the committee correctly applied the Rules of Professional Conduct, except that the board found the Rule 1.15(a) violation in the Bartholomew matter is properly based upon respondent’s failure to deposit the $1,500 fee in his trust account, not on his failure to safeguard the original title to the crypt.
The board determined that respondent knowingly violated duties owed to his clients and the legal profession. He caused harm to his clients by failing to complete their legal matters and by failing to return unearned legal fees and/or client *912 files. ■ His failure to cooperate with the ODC caused the agency to expend additional resources. The applicable baseline sanction in this matter is suspension.
The board found the following aggravating factors are present: a prior disciplinary record,[2] a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law. The board found the following mitigating factors are present: absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse.
Considering the prior jurisprudence of this court, and in light of the significant mitigating factors present, the board determined that a lesser sanction than that recommended by the committee is warranted. The record demonstrates that all of respondent’s misconduct occurred during the same general time period. 17Respondent testified that he was overwhelmed with his caseload at this time, which led him to scale back his practice and move his office to his home. Thus, he acknowledged his failures and made efforts to preyent future misconduct by reducing his caseload. Because his misconduct appears to be the result of overwork and poor law practice management rather than any intentional or dishonest motive, the board felt that requiring respondent to apply for reinstatement would not serve the unique facts of this case. Rather, the board concluded that a deferred period of suspension with probation would be more beneficial to respondent, his clients, and the legal profession.
Accordingly, the board recommended respondent be suspended from the practice of law for one year and one day, with all but thirty days deferred, followed by a two-year period of supervised probation with the condition that he attend Ethics School and obtain .assistance in proper law office management procedures. The board also recommended that respondent be required to resolve the fee disputes with Mrs. Bartholomew and Ms. Ball.
The ODC filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within .the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine.whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See | ¡¡In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record in this matter supports the hearing committee’s factual findings, as modified by the disciplinary board. Respondent violated the Rules of Professional Conduct by failing to complete his clients’ legal matters, failing to communicate with his clients, and failing to promptly return unearned fees and client files. He also failed in his professional obligation to coop *913 erate with the ODC in its investigation of the Ball matter.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Although the hearing committee recommended a substantial period of suspension in this matter, the disciplinary board felt that a deferred suspension with probation more nearly serves the goals of the disciplinary system. In making this recommendation, the board emphasized the significant mitigating factors present. The board also observed that much of respondent’s misconduct seemed to be the result of poor law office management practices, and that he did not act dishonestly or with a selfish motive.
Considering the totality of the facts of this case, we conclude the appropriate sanction for respondent’s misconduct, which caused actual harm to his clients, is a suspension from the practice of law for a period of one year and one day. 19However, like the board, we are mindful of the fact that respondent’s misconduct seems to arise from poor law office management skills rather than any improper motives. Under these circumstances, we will defer all but sixty days of the suspension. Upon completion of the active portion of his suspension, respondent shall be placed on supervised probation with the special conditions that he successfully complete Ethics School and resolve any fee dispute which remains in the Bartholomew and Ball matters. This sanction will give respondent an opportunity to correct the problems which caused the misconduct, while at the same time protecting the public from future misconduct.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Thomas Robert Schmidt, Louisiana Bar Roll number 26503, be and he hereby is suspended from the practice of law for one year and one day. It is further ordered that all but sixty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for a period of two years. As conditions of probation, respondent is ordered to attend and successfully complete the Louisiana State Bar Association’s Ethics School, and resolve any fee dispute that remains in the Bartholomew and Ball matters. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance 110with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent’s retainer agreement improperly characterized the advanced fee as nonrefundable. As a general rule, a fee paid by a client in advance to secure the performance of future legal services is not earned unless and until the lawyer performs the services, regardless of how the lawyer has characterized the fee in the retainer agreement.

. The board assigned this factor little weight, noting the misconduct at issue in the diversion was relatively minor and occurred contemporaneously with the misconduct at issue in this matter.