IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 1, 2015 Session

**BOARD OF PROFESSIONAL RESPONSIBILITY v. CONNIE REGULI**

**Appeal as of Right from the Circuit Court for Williamson County**
**Nos. 20149 and 201430     Robert L. Jones, Judge**

---

**No. M2015-00406-SC-R3-BP – Filed December 28, 2015**

---

A Board of Professional Responsibility hearing panel determined that an attorney violated multiple rules of professional conduct and imposed a suspension to be served on probation subject to certain conditions. The trial court affirmed the hearing panel's findings but modified the sanction by requiring the attorney to pay restitution, shortening the term of the suspension and probation, and eliminating and modifying other conditions of probation. Upon careful consideration, we affirm the trial court's order of restitution, but otherwise reinstate the decision of the hearing panel.

**Appeal Pursuant to Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Circuit Court Affirmed in Part, Reversed in Part**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., and FRANK G. CLEMENT, JR., SP.J., joined. JEFFREY S. BIVINS, J., not participating.

Connie Reguli, Brentwood, Tennessee, Pro Se.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

**I.**

This is an attorney discipline case involving Connie Reguli, who maintains a law office in Brentwood, Tennessee. On July 16, 2012, the Board of Professional Responsibility ("the Board") filed a petition for discipline against Ms. Reguli based on three complaints of misconduct.[1] The complaints arose out of Ms. Reguli's

---

[1] The Board's petition was filed pursuant to Tennessee Supreme Court Rule 9, section 8.2.

representation of Robert Castleman, representations on Ms. Reguli's website regarding her professional certification, and Ms. Reguli's representation of Sayuri Pope. The Board alleged that Ms. Reguli's conduct violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct (RPC) 1.4(a) and (b), Communication; 1.5(a) and (f), Fees; 1.16(d), Declining or Terminating Representation; 7.4(b), Communication of Fields of Practice and Specialization; 8.1(b), Bar Admission and Disciplinary Matters; and 8.4(a), (c), and (d), Misconduct.

Ms. Reguli answered the petition and denied any misconduct. In her answer and in pretrial motions, she asserted, among other things, that the United States and Tennessee Constitutions require that the Board's allegations be proven by clear and convincing evidence, that the Board be required to produce documentation confirming that the Board's Chair selected panel committee members on a rotating basis, that the hearing panel members be recused, and that Disciplinary Counsel Krisann Hodges be disqualified. Ms. Reguli filed numerous other motions and objections, including, but not limited to, an objection to holding the hearing in a private facility, a counterclaim against the Board alleging the Petition for Discipline was unsupported by fact and law and had been brought to harass Ms. Reguli, a motion to strike exhibits, a motion to bifurcate the Petition for Discipline's allegations and assign them to separate panels, an Americans with Disabilities Act accommodation request, a motion for a declaratory ruling as to whether Panel members are judges, a motion to stay the disciplinary proceeding pending disposition of a declaratory judgment action filed by Ms. Reguli against the Board in Davidson County Chancery Court, and a motion to dismiss the alleged RPC 1.5(f) violation.

A hearing panel ("the Panel") was appointed pursuant to Tennessee Supreme Court Rule 9.[2] On July 16, 2013, the Panel ruled on a number of Ms. Reguli's pre-hearing motions and objections. The Panel denied Ms. Reguli's request that the Panel employ a clear and convincing evidence standard and also denied her motion to disqualify Ms. Hodges. The Panel also dismissed Ms. Reguli's counterclaim and took under advisement her requests for disclosures regarding the manner in which Panel members are appointed. Ms. Reguli continued to file a number of other motions and objections until the hearing.

---

Effective January 1, 2014, this Court adopted substantial changes to Tennessee Supreme Court Rule 9. Because this case was initiated before January 1, 2014, it is governed by the pre-2014 version of Tennessee Supreme Court Rule 9. All references in this opinion to Tennessee Supreme Court Rule 9 refer to the pre-2014 version.

[2] The Panel's membership was altered twice in the proceeding following the motions for recusal by Ms. Reguli. The Panel in its final form was assembled on February 27, 2013.

## II.

The Panel conducted a hearing on November 13 and 14, 2013. Ms. Reguli, Robert Castleman, Kathryn Wright, and David Johnson testified before the Panel.

On July 21, 2011, Ms. Reguli and Mr. Castleman entered into a written fee agreement for Ms. Reguli to represent Mr. Castleman in his divorce proceeding. Mr. Castleman paid Ms. Reguli $10,000 and signed the fee agreement. The agreement provided that the "$10,000 will be held in escrow and the hourly fees will be charged against this retainer"; that "[o]nce the full amount of the retainer has been used for legal services, an additional retainer may be required, depending on the status of the case"; and that "[i]f services are completed or ended prior to the expiration of the funds held in escrow, the return of the funds will be at the discretion of the firm in accordance with Formal Ethics Opinion 92-F-128."[3]

Ms. Reguli testified that she understood that Formal Ethics Opinion 92-F-128 provided that nonrefundable retainers are acceptable if they are in writing. Ms. Reguli believed the language "at the discretion of the firm" in the fee agreement made the retainer nonrefundable. She testified that she reviewed the fee agreement with Mr. Castleman, but did not provide him with a copy of the ethics opinion. Mr. Castleman testified that he did not know the contents of Formal Ethics Opinion 92-F-128 when he signed the agreement. Mr. Castleman stated that he only read two paragraphs of the agreement and that he did not feel the need to ask questions about the contract because he trusted Ms. Reguli as an attorney. Ms. Reguli testified that she assumed she placed the $10,000 in her escrow account and that she most likely withdrew amounts from the retainer as she worked on Mr. Castleman's case.

About three or four weeks after signing the agreement, Mr. Castleman discharged Ms. Reguli as his lawyer. Mr. Castleman testified he tried to contact Ms. Reguli to get an accounting of the time Ms. Reguli spent on his case and to recoup the unearned portion of the fee. He stated that he called Ms. Reguli's office several times and left messages that were not returned and also called Ms. Reguli's cell phone without a return call. On September 20, 2011, Mr. Castleman sent Ms. Reguli a letter requesting an itemized billing and a refund of the balance of the retainer. According to Mr. Castleman, he did not receive an accounting or a refund from Ms. Reguli. Mr. Castleman stated that his address at the time he sent the September 2011 letter was a different address than when he signed the fee agreement.

---

[3] Formal Ethics Opinion 92-F-128 states, in pertinent part, "All pre-paid, advanced or retainer fees are ethically deemed to be refundable in the absence of a clear understanding by the client to the contrary, preferably in writing." Tenn. Bd. of Prof'l Responsibility, Formal Ethics Op. 92-F-128 (1992).

Ms. Reguli testified that in September 2011, she provided Mr. Castleman with an accounting of the time she spent on his case. Ms. Reguli stated that she mailed Mr. Castleman the requested information, but by that time, Mr. Castleman had changed his address. At the hearing, Ms. Reguli produced an accounting that listed billed hours and corresponding fees of $2,082.50 and expenses of $116.75, for a total of $2,199.25 charged against the $10,000 retainer. Ms. Reguli did not refund the balance of the retainer to Mr. Castleman.

Kathryn Wright, an administrative assistant at Ms. Reguli's law firm, testified that she answers phones in Ms. Reguli's office. Ms. Wright stated that she transfers calls to attorneys if they are available, and if not, she takes a message. Ms. Wright records messages in a computerized system. She testified that someone is always available to answer the office phone during working hours, even if she is temporarily unavailable. Ms. Wright does not answer Ms. Reguli's cell phone calls. Ms. Wright acknowledged receiving Mr. Castleman's September 20, 2011 letter. Ms. Wright stated that she scans letters and places them in attorneys' inboxes upon receipt, but she did not recall what she did with Mr. Castleman's letter. Ms. Reguli testified that she reviewed her office's computerized message system and did not see any notations of messages left for her by Mr. Castleman from August through October 2011.

The Board received a complaint from Mr. Castleman regarding Ms. Reguli on October 18, 2011. The Board forwarded the complaint to Ms. Reguli in a letter dated October 27, 2011, and requested that she submit a response to the Board. Ms. Reguli responded to the Board on November 3, 2011, stating that the fee agreement provided that any refund would be at her discretion. In letters dated January 13, 2012, and February 9, 2012, the Board specifically requested billing records or a detailed summary of Ms. Reguli's work in Mr. Castleman's case. Ms. Reguli responded on February 12, 2012, referring to her initial response to Mr. Castleman's complaint and declining to provide the requested documents. Ms. Reguli did not produce the billing records to the Board until the November 2013 hearing.

On or about November 1, 2011, attorney David Johnson filed a complaint with the Board about Ms. Reguli's website. Mr. Johnson alleged that Ms. Reguli's website misrepresented Ms. Reguli as a certified specialist in family law and divorce. Ms. Reguli's website listed the following information on her attorney profile page: "Certification/Specialties: . . . Family Law[,] Divorce." Ms. Reguli admitted that she was not certified as a specialist in family law and divorce.

Ms. Reguli testified that since 2006, she had a website hosted by a company called FirmSite and in 2007, she approved information for public posting by FirmSite. Ms. Reguli testified that she did not put the certification information on her website and was not aware that the website described her as being certified or being a specialist in family

law and divorce until receiving Mr. Johnson's complaint in 2011. Ms. Reguli stated that she checked her website periodically before 2011, but never noticed the incorrect information. Ms. Reguli noted at the hearing that the website also falsely stated that she was licensed in the United States District Court for the Middle District of Pennsylvania and that she graduated from Purdue University in "Lafayette, Tennessee."[4] Ms. Reguli testified that when she received the Johnson complaint, she was very ill with cancer. She contacted the FirmSite company to correct the website in early spring of 2012.

The third complaint was filed by Janson Pope. Ms. Reguli represented Sayuri Pope in a divorce proceeding against Janson Pope. Mr. Pope alleged that Ms. Reguli drafted and filed an order with a court that did not accurately reflect a judgment against her client, Ms. Pope. Ms. Reguli testified that the trial court awarded Mr. Pope periodic alimony payments but did not prescribe when the payments would commence. Mr. Pope's attorney filed a petition for contempt alleging that Ms. Pope was in contempt for failure to make the alimony payments. The court held a hearing on the motion and issued a ruling from the bench. Mr. Pope's attorney and Ms. Reguli submitted different orders to the trial court. The trial court judge signed an order prepared by Ms. Reguli. Mr. Pope later filed a Tennessee Rule of Civil Procedure 59 motion, which alleged that the order Ms. Reguli drafted did not accurately reflect the court's decision. The court modified its earlier ruling and awarded Mr. Pope $1,000 for attorney fees related to his Rule 59 motion.

The Panel entered its findings on November 18, 2013, and its amended findings on December 27, 2013. With respect to the Castleman complaint, the Panel found that (1) Mr. Castleman sought to discharge Ms. Reguli and requested an accounting of fees earned; (2) Ms. Reguli's failure to provide the Board with an accounting showed that no accounting existed; and (3) the "some seven thousand dollars" of the fee that Ms. Reguli did not refund was unreasonable for the work she provided. The Panel found that this constituted violations of RPCs 1.4(a)(4)[5] and (b),[6] 1.5(f),[7] 1.16(d)(4) and (6),[8] 8.1(b),[9] and 8.4(a) and (d).[10]

---

[4] Purdue University is located in West Lafayette, Indiana.

[5] RPC 1.4(a)(4) states, "A lawyer shall . . . (4) promptly comply with reasonable requests for information[.]"

[6] RPC 1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[7] RPC 1.5(f) states, "A fee that is nonrefundable in whole or in part shall be agreed to in a writing, signed by the client, that explains the intent of the parties as to the nature and amount of the nonrefundable fee."

[8] RPC 1.16(d) states, in pertinent part:

The Panel found that Ms. Reguli's website falsely stated that she had "Certification/Specialties:" in "Family Law and Divorce" and therefore Ms. Reguli had violated RPC 7.4(b).[11] The Panel dismissed the Board's claim regarding alleged misconduct in the Pope divorce matter, finding insufficient proof.

The Panel concluded the aggravating circumstances applicable were (1) prior professional discipline of Ms. Reguli;[12] (2) Ms. Reguli's bad faith failure to respond to requests for information by the Board; (3) dishonest or selfish motives of Ms. Reguli; (4) Ms. Reguli's refusal to recognize the wrongful nature of her conduct; and (5) Ms. Reguli's substantial experience in the practice of law.[13] The Panel found Ms. Reguli's cancer and chemotherapy treatments during the period of her misconduct to be a mitigating circumstance.

---

(d) A lawyer who is discharged by a client, or withdraws from representation of a client, shall, to the extent reasonably practicable, take steps to protect the client's interests. Depending on the circumstances, protecting the client's interests may include: . . . (4) promptly surrendering papers and property to which the client is entitled and any work product prepared by the lawyer for the client and for which the lawyer has been compensated . . . and (6) promptly refunding any advance payment of fees that have not been earned or expenses that have not been incurred.

[9] RPC 8.1 states, in pertinent part:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
. . . .
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by RPC 1.6.

[10] RPC 8.4 states, in pertinent parts:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
. . . .
(d) engage in conduct that is prejudicial to the administration of justice[.]

[11] RPC 7.4(b) states, in pertinent part, "[A] lawyer shall not state that the lawyer is a specialist, specializes, or is certified or recognized as a specialist in a particular field of law."

[12] In 2011, Ms. Reguli received a public censure for professional misconduct.

[13] Ms. Reguli has been licensed to practice law in Tennessee since 1994.

The Panel imposed an eleven month, twenty-nine day suspension, to be served on probation subject to certain conditions. The probation conditions required Ms. Reguli to practice subject to extensive supervision of a probation monitor pursuant to Tennessee Supreme Court Rule 9, section 8.5, participate in an evaluation by the Tennessee Lawyer Assistance Program ("TLAP"), and comply with any monitoring requirement TLAP deemed necessary. The Panel did not order Ms. Reguli to pay restitution to Mr. Castleman. Both parties appealed the Panel's decision.

Following a review of the record and a hearing where no new evidence was introduced, the trial court affirmed the Panel's findings but modified its sanctions by (1) reducing Ms. Reguli's eleven month, twenty-nine day suspension to sixty days, all of which the court suspended with no active time served; (2) placing Ms. Reguli on probation for one year subject to supervision of a probation monitor; (3) requiring Ms. Reguli to serve a six-month active suspension should she violate the terms of her probation; (4) reducing the scope of the probation monitor's supervision of Ms. Reguli's law practice; (5) eliminating the Panel's requirement that Ms. Reguli undergo a TLAP evaluation; and (6) ordering Ms. Reguli to pay restitution to Mr. Castleman in the amount of $7,800, with the condition that if she pays the restitution within six months, some of her monitoring requirements will be eliminated. Both Ms. Reguli and the Board appealed to this Court.

## III.

"The Supreme Court of Tennessee is the source of authority of the Board of Professional Responsibility and all its functions." *Mabry v. Bd. of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) (citing *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000)). We have the duty to regulate the practice of law and to enforce the rules of the legal profession. *Id.* (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 470 (Tenn. 2003)). "In furtherance of this duty, we have established a system where attorneys charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which must determine the disciplinary penalty." *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 267 (Tenn. 2012) (citing Tenn. Sup. Ct. R. 9, § 8.2). "We review [hearing panel] judgments under our 'inherent power and essential and fundamental right to administer the rules pertaining to the licensing of attorneys.'" *Mabry*, 458 S.W.3d at 903 (quoting *Skouteris v. Bd. of Prof'l Responsibility*, 430 S.W.3d 359, 362 (Tenn. 2014)).

When reviewing the decision of a disciplinary hearing panel, we employ the same standard of review as the trial court. *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 150 (Tenn. 2013) (citing *Cowan*, 388 S.W.3d at 267). Accordingly, we will reverse or modify the decision of a hearing panel only if

-7-

the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3. We do not substitute our judgment for that of the hearing panel as to the weight of the evidence or questions of fact. *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 323 (Tenn. 2009) (citing *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 653 (Tenn. 2008)). We review questions of law de novo with no presumption of correctness. *Cowan*, 388 S.W.3d at 267 (citing *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010)).

The issues Ms. Reguli raises for our review are (1) whether the Panel's findings are void because the Panel Chair exceeded his authority; (2) whether the Panel erred in denying Ms. Reguli's disclosure requests regarding the Board's panel-member-appointment process and whether the Board's appointment procedure is unlawful; (3) whether the Panel erred in declining to disqualify Ms. Hodges; (4) whether the Panel's findings of fact and conclusions of law were arbitrary and capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence; (5) whether the imposition of probation and restitution was arbitrary and capricious or inconsistent with American Bar Association ("ABA") standards; and (6) whether Tennessee's attorney disciplinary system is unconstitutional. The Board raises a single issue—whether the trial court erred by modifying the Panel's probationary period and requirements.

Ms. Reguli contends that the Panel's findings are void because the Panel Chair acted unilaterally and outside his scope of authority. In support of this contention, Ms. Reguli presents arguments that the Chair (1) made unilateral evidentiary rulings; (2) abused his discretion in evidentiary rulings; (3) made rude and derogatory prejudicial remarks; and (4) signed the judgment form for the other Panel members.

Ms. Reguli's claim as to the actions of the Panel Chair is without merit. Tennessee Supreme Court Rule 9, section 5.5(b) allows the Board to adopt written guidelines, subject to approval by this Court, to ensure efficient and timely disciplinary proceedings. Under the guidelines applicable to Ms. Reguli's proceeding, the Panel Chair had the authority to rule on evidentiary issues with the advice and consent of the other Panel members. *Policies and Rules of the Board of Professional Responsibility of the Supreme Court of Tennessee*, § 2.5, adopted December 14, 2012, *available at* https://www.yumpu.com/en/document/view/27067404/policies-and-rules-of-the-board-of

-professional-responsibility/3 ("The Chair of the hearing panel will preside at the hearing and with the advice and consent of the other members of the hearing panel will rule on all issues of law, evidence and procedure arising during the hearing."). The record demonstrates that the other Panel members were actively engaged in the proceeding, including evidentiary rulings. The Panel members had the opportunity to fully participate. We conclude that the Panel Chair acted appropriately within the bounds of his authority.

Ms. Reguli further contends that a number of the Panel Chair's evidentiary rulings constitute abuses of discretion. A Panel abuses its discretion by "appl[ying] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning that causes an injustice to the party complaining." *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 42 (Tenn. 2015) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)) (internal quotation marks omitted). This is a deferential standard of review, *Sanford v. Waugh & Co.*, 328 S.W.3d 836, 847 (Tenn. 2010) (citing *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005)), and we will uphold the Panel's rulings "so long as reasonable minds can disagree as to propriety of the decision[s] made[,]" *Sallee*, 469 S.W.3d at 42 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)) (internal quotation mark omitted). As the party challenging the rulings, Ms. Reguli has the burden to show the Panel abused its discretion. *Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996) (citing *Rachels v. Steele*, 633 S.W.2d 473, 475 (Tenn. Ct. App. 1981)). Upon review of the record, we conclude that Ms. Reguli has failed to show that the Panel or its Chair abused its discretion regarding evidentiary rulings.

As for Ms. Reguli's claim that the Panel Chair made rude and derogatory prejudicial remarks, our review of the record finds no indication that the Panel Chair acted inappropriately. The Panel Chair was engaged and questioned Ms. Reguli as a witness and an advocate. The Tennessee Rules of Evidence apply to attorney disciplinary proceedings, Tenn. Sup. Ct. R. 9, § 23.3, and Tennessee Rule of Evidence 614 allows the Panel to interrogate witnesses. By choosing to represent herself in this proceeding, Ms. Reguli submitted herself to questioning from the Panel, both as a witness and as an advocate. The Panel Chair had the authority to limit testimony or arguments that were repetitive. The Panel Chair was balanced in his rulings and sometimes ruled in Ms. Reguli's favor on evidentiary objections. We conclude that the Panel Chair's rulings and conduct were reasonable and not an abuse of discretion.

Next, Ms. Reguli argues that the Panel Chair exceeded his authority by signing the order for the other Panel members. Ms. Reguli offered no evidence that the Panel Chair signed on behalf of the other Panel members without their permission or their knowledge. This argument has no merit.

In her second issue, Ms. Reguli asserts that the Panel erred in failing to allow discovery on the appointment of Panel members on a "rotating basis," as required by Tennessee Supreme Court Rule 9, section 8.2. Ms. Reguli filed a "Demand for Compliance on Hearing Panel Appointment," requesting certain documents be provided to her. At a hearing on June 4, 2013, the Panel took the demand under advisement. The matter proceeded to trial in November 2013 without a ruling on the demand. Ms. Reguli did not pursue it further. There is no decision from which to appeal, and Ms. Reguli, therefore, waived appellate review. *See Nashville, Chattanooga & St. Louis Ry. v. Hayes*, 99 S.W. 362, 366 (Tenn. 1907) ("It is the duty of the litigant . . . to invoke the action of the lower court upon [his or her respective] motions, and, failing to do so, . . . will not [b]e heard to complain in this court . . . ."); *see also State ex rel. Jones v. Looper*, 86 S.W.3d 189, 202 (Tenn. Ct. App. 2000); *Kendricks v. State*, 13 S.W.3d 401, 403 (Tenn. Crim. App. 1999).

Ms. Reguli argues that the Panel's decision is unlawful and should be vacated because Panel members were selected based on a "random" selection process as opposed to a "rotating" selection process. Tennessee Supreme Court Rule 9, section 6.4 provides that panel members are to be selected from district committee members in accordance with Tennessee Supreme Court Rule 9, section 8.2. In response, the Board contends that no functional difference exists between a random or a rotating panel member selection process due to the many reasons members may turn down appointments. The Board argues that district committee members serve voluntarily and can turn down an appointment for any reason. Additionally, the Board cites Tennessee Supreme Court Rule 9, section 6.5, which precludes district committee members from serving on a panel if "a judge, similarly situated, would have to recuse himself or herself." Ms. Reguli's challenge to the selection process is without merit. The trial court may hear additional proof to resolve allegations of procedural irregularity before a hearing panel. Tenn. Sup. Ct. R. 9, § 1.3. Ms. Reguli did not present proof of an irregular procedure to the trial court, nor are the documents she references in her brief part of the evidentiary record before this Court. Even if there was evidence in the record showing that the Board appointed the Panel members on a "random" basis, this would not warrant vacating the Panel's decision. No substantial right is implicated by the use of a "random" selection process as opposed to a "rotating" process, and we agree with the Board that no meaningful difference exists between the two. We find no error in the manner in which Panel members were selected nor any unlawful procedure.

The day before oral argument before this Court, Ms. Reguli filed a document alleging unlawful procedure in the trial court. Specifically, Ms. Reguli relies on a transcript of a telephone message that the trial judge, while connected to Ms. Reguli via telephone, left on Ms. Hodges' voice mail. The message concerned a post-judgment motion the Board filed in the trial court seeking modification of the trial court's sanction. The trial judge orally denied the Board's motion and noted that he had discussed the

Board's motion with the Panel Chair. Ms. Reguli objects to the trial judge's communication with the Panel Chair. The trial judge disclosed the communication as he denied the Board's motion. We find no error, and even if there was error, there is no showing that this communication more probably than not affected the final judgment of the trial court or that Ms. Reguli was prejudiced. *See* Tenn. R. App. P. 36(b).

Ms. Reguli next contends that the Panel erred in failing to disqualify Ms. Hodges because Ms. Hodges sent an e-mail to members of the Disciplinary Counsel's office informing them that Ms. Reguli had cancer. In response to the e-mail, Nancy Jones, Chief Disciplinary Counsel, sent Ms. Reguli a letter expressing Ms. Jones' condolences and suggesting that Ms. Reguli consider whether disability inactive status of her law license would be appropriate. Ms. Reguli argues that Disciplinary Counsel are held to the same ethical standards that apply to prosecutors in criminal proceedings. In criminal proceedings, a conflict of interest can disqualify a prosecutor where circumstances exist which render the prosecutor incapable of "exercis[ing] his or her independent professional judgment free of 'compromising interests and loyalties.'" *State v. Culbreath*, 30 S.W.3d 309, 312 (Tenn. 2000) (citation omitted). An appearance of a conflict of interest may also require disqualification. *Id.* at 313. The determination of whether to disqualify an attorney is within the discretion of the trial court, and review is under an abuse of discretion standard. *Id.* We need not decide if Disciplinary Counsel is held to the same ethical standards that apply to prosecutors in criminal proceedings. Even if so, the circumstances here fail to show an actual or the appearance of a disqualifying interest of Ms. Hodges. Ms. Hodges' e-mail does not indicate any malicious intent or improper purpose. The letter from Ms. Jones fails to demonstrate any disqualifying interest of Ms. Hodges. Instead, the letter represents only an expression of concern regarding Ms. Reguli's health. Ms. Reguli's illness was a relevant consideration because an illness can justify delaying a disciplinary proceeding and can make disability inactive status appropriate for that attorney. Tenn. Sup. Ct. R. 9, § 21.3. Illness can likewise be a mitigating factor in determining an appropriate disciplinary sanction under the *ABA Standards for Imposing Lawyer Sanctions* ("ABA Standards"). ABA Standard 9.32. The Panel did not abuse its discretion in declining to disqualify Ms. Hodges.

Ms. Reguli next contends that the Panel's findings of fact and conclusions of law were arbitrary and capricious, an abuse of discretion, or unsupported by substantial and material evidence. A decision that lacks substantial and material evidentiary support is arbitrary and capricious. *Allison*, 284 S.W.3d at 322. Evidence is sufficient to support a factual finding "if it furnishes a reasonably sound factual basis for the decision being reviewed." *Id.* (quoting *City of Memphis v. Civil Serv. Comm'n of Memphis*, 216 S.W.3d 311, 316-17 (Tenn. 2007)) (internal quotation marks omitted). This "has . . . been described as requiring 'something less than a preponderance of the evidence . . . but more than a scintilla or glimmer.'" *Id.* at 322-23 (quoting *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)). Like the trial court, this Court must not

substitute its judgment for that of the Panel. *Id.* at 323. Nor will we re-weigh the evidence before the Panel, as the Panel "is uniquely suited to make credibility determinations of witnesses." *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 181 (Tenn. 2014) (quoting *Culp v. Bd. of Prof'l Responsibility*, 407 S.W.3d 201, 208 (Tenn. 2013)) (internal quotation marks omitted). Thus, we defer to the Panel's witness credibility determinations. *Id.*

With respect to the complaint regarding the Castleman fee, there was material and substantial evidence to support the Panel's findings that Ms. Reguli violated RPC 1.4(a)(4), which requires an attorney to promptly comply with reasonable requests for information. There was proof that Ms. Reguli failed to respond to Mr. Castleman's requests for information about an accounting and refund of the fee he paid. Ms. Reguli testified she sent Mr. Castleman an accounting; he said he did not receive one. We defer to the Panel's finding that it was "highly unlikely" that Ms. Reguli ever sent Mr. Castleman an accounting. RPC 1.4(b) requires an attorney to explain a matter to a client to the extent reasonably necessary for the client to make an informed decision about the representation. The proof indicated Ms. Reguli failed to fully and adequately explain to Mr. Castleman her understanding of the fee agreement.

There was also substantial and material evidence that Ms. Reguli failed to return unearned fees pursuant to RPC 1.16(d)(6). The fee agreement signed by Mr. Castleman did not provide for a nonrefundable fee. Ms. Reguli retained the unearned fee and failed to refund the balance to Mr. Castleman. The term "retainer" is often used to describe three variations of fee arrangements. *See* Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 114-18 (2009). One type of retainer is the general retainer, sometimes called a "true" or "classic" retainer. *Id.* at 114. This fee merely ensures a lawyer's availability to a client. *Id.* at 114-15. The client must pay the lawyer additional fees for actual legal services performed by the lawyer should the client wish to employ the lawyer for a particular matter. *Id.* at 115. The Tennessee Rules of Professional Conduct recognize that general retainer fees are earned upon receipt, assuming the lawyer remains available to serve the client. Tenn. Sup. Ct. R. 8, RPC 1.5 cmt. 4a. Because this fee is earned upon receipt, the fee should not be placed in a client trust account, as the fee becomes the lawyer's property. *See* Tenn. Sup. Ct. R. 8, RPC 1.15 cmt. 10. Another type of retainer is the "advance fee retainer," which "is a present payment to a lawyer as compensation for the provision of specified legal services in the future." Richmond, *supra*, at 118. This fee is intended to compensate the lawyer for *all* work to be done on a matter, and is more commonly known as a "fixed" or "flat" fee. *Id.* (emphasis added). This fee is also earned upon receipt, assuming the lawyer is available to perform the services. Tenn. Sup. Ct. R. 8, RPC 1.5 cmt. 4a. Accordingly, an earned fixed fee should not be placed in a client trust account. Tenn. Sup. Ct. R. 8, RPC 1.15 cmt. 10. A remaining retainer fee is the "security retainer," which "is intended to secure the client's payment of fees for future services that the lawyer is expected to perform."

-12-

Richmond, *supra,* at 116. A "lawyer who collects a security retainer draws it down pursuant to an agreed hourly rate as the lawyer earns the fees by performing legal services for the client." *Id.* at 117. Retainer funds paid pursuant to a security retainer agreement "remain the client's property until the lawyer applies them to charges for services that are actually performed." *Id.* Thus, a lawyer must initially place such fees into a client trust account and only withdraw the fees as the lawyer earns them. Tenn. Sup. Ct. R. 8, RPC 1.15 cmt. 10. Any portion of such a fee not earned by the lawyer upon termination of the lawyer's representation must be returned to the client pursuant to RPC 1.16(d)(6). *See also* Tenn. Sup. Ct. R. 8, RPC 1.5 cmt. 4; Tenn. Sup. Ct. R. 8, RPC 1.15 cmt. 10.

As shown by the fee agreement, the fee Mr. Castleman paid to Ms. Reguli was not earned upon receipt by Ms. Reguli. The fee agreement provided that the fee would be held in escrow and Ms. Reguli's hourly fees would be charged against the retainer. The payment therefore was considered as security to ensure payment for legal services to be provided in the future and not merely to assure Ms. Reguli's availability. Accordingly, the $10,000 was not a general retainer earned by Ms. Reguli upon receipt. *See* Richmond, *supra*, at 114; Tenn. Sup. Ct. R. 8, RPC 1.5 cmt. 4a. The fee agreement additionally provided that once the full amount of the retainer had been used for legal services, an additional retainer would be required, depending on the status of the case. This language clearly precludes the possibility that the $10,000 was a "fixed fee" earned by Ms. Reguli upon receipt. *See* Richmond, *supra*, at 118; Tenn. Sup. Ct. R. 8, RPC 1.5 cmt. 4a.

Ms. Reguli admitted that she did not refund any part of the $10,000, which was in excess of the fees for which she billed Mr. Castleman. Ms. Reguli had an ethical duty to return the unearned portion of the fee when Mr. Castleman terminated her services. Tenn. Sup. Ct. R. 8, RPC 1.16(d)(6). There was substantial and material evidence to support the Panel's finding that Ms. Reguli violated RPC 1.16(d)(6).

Ms. Reguli maintains that the fee she collected from Mr. Castleman was a nonrefundable fee. However, RPC 1.5(f) requires "[a] fee that is nonrefundable in whole or in part [to] be agreed to in a writing, signed by the client, that explains the intent of the parties as to the nature and amount of the nonrefundable fee." The fee agreement was in writing and signed by Mr. Castleman, but failed to adequately explain that it was nonrefundable. The reference in the fee agreement that the funds would be returned "at the discretion of the firm" is inadequate to make it clear that the fee was nonrefundable. *Cf. In re Disciplinary Proceeding Against Van Camp*, 257 P.3d 599, 612 (Wash. 2011) (holding that attorney could not justify contention that he charged a "flat fee" where his "fee agreement contain[ed] both [an] 'earned retainer' phrase and listed hourly rates, which suggest[ed] that hourly rates may be charged against the 'earned retainer'

-13-

amount"). Accordingly, there was substantial and material evidence to support the Panel's finding that Ms. Reguli violated RPC 1.5(f).

Ms. Reguli admitted that she never provided the Board, as requested, with an accounting of her time on the Castleman matter. This supports the Panel's finding that she violated RPC 8.1(b), which prohibits an attorney from knowingly failing to respond to a lawful demand for information from a disciplinary authority. The various violations described above also support the Panel's finding that Ms. Reguli violated RPC 8.4(a) and (d), which prohibit an attorney from violating any rule of professional conduct and engaging in conduct prejudicial to the administration of justice.

With respect to the complaint about her website, it is undisputed that Ms. Reguli's website represented her as having "Certification/Specialties" in "Family Law[,] Divorce." Ms. Reguli admitted she was not certified as a specialist in any field of law. This is substantial and material evidence to support the Panel's finding that she violated RPC 7.4(b). Even though Ms. Reguli may not have provided the false information to her website company, she is responsible for the contents of her website. Attorney advertising includes all potential ways in which attorneys can communicate information about their services to the public, including communication through websites. *See* Tenn. Sup. Ct. R. 8, RPC 7.2 cmt. 1 ("The Rule [on advertising] encompasses all possible media through which such communications may be directed to the public."). Whether websites are maintained by the attorney or a third party, the attorney has the ultimate responsibility for monitoring and reviewing the advertisement to ensure compliance with ethical rules. *See In re Hyderally*, 32 A.3d 1117, 1122 (N.J. 2011) (dictum) ("Whether a website is created by an outside consultant or developed and maintained by an attorney or his or her staff, all language and design that appears on it should be reviewed frequently for compliance with . . . all Rules of Professional Conduct."); *cf. In re Anonymous*, 689 N.E.2d 434, 435 (Ind. 1997) (disciplining attorney for misleading advertising even though communication of misleading information was "unintentional"); *Columbus Bar Ass'n v. Dugan*, 865 N.E.2d 895, 897-98 (Ohio. 2007) (disciplining attorney in part for improper statements on the attorney's website entered by the attorney's secretary without the attorney's consultation). Ms. Reguli bears the responsibility for the misrepresentation on her website. Accordingly, the Panel's finding that she violated RPC 7.4(b) was supported by substantial and material evidence.

Ms. Reguli next contends that the imposition of suspension and probation in this case was arbitrary and capricious or inconsistent with the ABA Standards. Specifically, Ms. Reguli challenges the trial court's modification of the sanctions because the trial court did not reference the ABA Standards as required by Tennessee Supreme Court Rule 9, section 8.4. The Board contends in its sole issue that the trial court correctly modified the Panel's sanction by requiring Ms. Reguli to pay restitution, but otherwise erred in modifying the Panel's suspension and probation conditions. The Board argues that

(1) the trial court's modified sanction of a sixty-day suspension (all of which is to be suspended with no active time served), coupled with a one-year probationary period, effectively and inappropriately imposes two suspensions at the same time; (2) the trial court erred by preemptively determining the length of active suspension should Ms. Reguli fail to meet her probation conditions; (3) the trial court's decision to eliminate the Panel's TLAP evaluation condition is arbitrary and capricious; and (4) the trial court had an insufficient basis to modify the responsibilities of the probation monitor.

When determining the level of discipline to impose upon an attorney for misconduct, a hearing panel must consider relevant provisions of the ABA Standards. Tenn. Sup. Ct. R. 9, § 8.4. The ABA Standards represent "guideposts," as opposed to bright-line rules when determining sanctions for professional misconduct. *Bailey v. Bd. Prof'l Responsibility*, 441 S.W.3d 223, 232 (Tenn. 2014). The ABA Standards provide that when imposing a sanction, a court should consider "[(1)] the duty violated; [(2)] the lawyer's mental state; [(3)] the potential or actual injury caused by the lawyer's misconduct; and [(4)] the existence of aggravating or mitigating factors." ABA Standard 3.0. Aggravating factors include prior discipline, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of disciplinary proceedings, refusal to acknowledge the wrongful nature of conduct, and substantial experience in the practice of law. ABA Standard 9.22. Mitigating factors include personal or emotional problems. ABA Standard 9.32. When reviewing disciplinary sanctions, this Court reviews comparable cases to ensure consistency in discipline. *Bailey*, 441 S.W.3d at 236.

The Panel properly considered the factors in ABA Standard 3.0 when determining Ms. Reguli's sanction. The Panel appropriately made findings of five aggravating factors and a single mitigating factor, all of which are supported by the record. Taking these considerations into account, the Panel properly imposed an eleven month, twenty-nine day suspension, to be served on probation subject to various conditions.

The trial court correctly determined that the Panel's failure to order Ms. Reguli to pay restitution was arbitrary. The Panel made a specific factual finding that Ms. Reguli charged Mr. Castleman an unreasonable fee based on the work Ms. Reguli performed and that Ms. Reguli failed to refund the unearned portion of the fee. Tennessee Supreme Court Rule 9, section 4.7 provides for restitution when a lawyer's misconduct financially injures a person or entity. ABA Standard 2.8 also provides for restitution. As the trial court noted, unless Ms. Reguli makes restitution to Mr. Castleman, she will gain a windfall at the expense of Mr. Castleman. Accordingly, the trial court's modification of the Panel's sanction requiring Ms. Reguli to make restitution to Mr. Castleman in the amount of $7,800 was proper.

However, the trial court erred in modifying the rest of the Panel's sanction. First, the trial court erred in eliminating the Panel's probation condition that Ms. Reguli

undergo a TLAP evaluation by determining that the requirement was not necessary. The trial court did not see or hear Ms. Reguli testify at the hearing. The Panel's judgment reflected that it "saw evidence" during the hearing that a TLAP evaluation was warranted. In eliminating the TLAP evaluation, the trial court impermissibly substituted its judgment for that of the Panel. *See Mabry*, 458 S.W.3d at 903 (noting that a trial court must refrain from substituting its judgment for that of a hearing panel as to the weight of evidence). In the same manner, the trial court impermissibly substituted its judgment for the Panel in reducing the scope of the probation monitor's supervision of Ms. Reguli[14] and by restructuring the Panel's eleven month, twenty-nine day suspension. The Panel properly considered the ABA Standards, including making findings of aggravating and mitigating factors. Accordingly, the Panel acted appropriately in imposing its sanction, aside from its failure to provide for restitution.

A review of comparable cases demonstrates that the Panel's eleven month, twenty-nine day suspension to be served on probation, coupled with the trial court's order of restitution, is consistent with sanctions ordered in other cases. *See Sallee*, 469 S.W.3d at 40-41 (upholding a one-year suspension where attorney charged an unreasonable fee, failed to inform clients of inaccurate fee estimate, and refused to recognize wrongful nature of conduct); *Threadgill v. Bd. of Prof'l Responsibility*, 299 S.W.3d 792, 799-800, 810 (Tenn. 2009) (affirming a one-year suspension where attorney failed to deliver accounting to client, among other ethical violations), *overruled on other grounds by Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 27-28 (Tenn. 2012); *see also People v. Weisbard*, 35 P.3d 498, 509 (Colo. 2000) (ordering an eighteen-month suspension where attorney refused to account and refund unearned funds, failed to return client calls for extended period of time, and committed other violations); *In re Schmidt*, 130 So. 3d 908, 910, 913 (La. 2013) (one-year and a day suspension imposed, along with requirement that attorney resolve fee disputes with clients, where attorney failed to provide an accounting, refund unearned funds, and cooperate with disciplinary authority). The Panel's original sanction is reinstated, along with the additional requirement that Ms. Reguli pay Mr. Castleman restitution in the amount of $7,800.

Finally, Ms. Reguli contends that Tennessee's attorney discipline system is unconstitutional for several reasons. Ms. Reguli first contends that the preponderance-of-the-evidence standard in attorney disciplinary proceedings is unconstitutional. She

---

[14] The Panel's decision provided that Ms. Reguli must employ and meet with a probation monitor on a monthly basis to review her billing practices, including review of her fee arrangements and of any refunds due to clients in the case of termination or conclusion of services. Additionally, the Panel's decision required Ms. Reguli to inform her practice monitor of any complaint by attorneys or judges regarding pleadings drafted by Ms. Reguli. The probation monitor was required to provide monthly reports of Ms. Reguli's compliance to the Board. In contrast, the trial court's probation monitor requirement provided that the practice monitor review all engagement letters and fee agreements or contracts to ensure compliance with the Rules of Professional Conduct.

argues that due process demands a standard of proof at least as stringent as the clear and convincing evidence standard. Ms. Reguli also argues that the combined investigative, enforcement, and adjudicative functions of the Board violate due process. Ms. Reguli's various remaining arguments allege that the Board is an unconstitutional body because of the financial interests of its members in the outcome of disciplinary proceedings and that the system otherwise lacks adequate due process safeguards.

We foreclosed each of these arguments in our recent holding in *Walwyn v. Board of Professional Responsibility*, No. M2015-00565-SC-R3-BP, 2015 WL 7770161 (Tenn. Dec. 3, 2015). There, we held the preponderance-of-evidence standard of proof in attorney disciplinary proceedings is constitutional. *Id.* at *15. We addressed Ms. Reguli's further arguments by reaffirming our previous holdings in *Long*, 435 S.W.3d at 186-88, and *Moncier*, 406 S.W.3d at 156. *Walwyn*, 2015 WL 7770161, at *16. In *Long*, we held that because the Board's multiple responsibilities "are functionally separate within the Board, Rule 9 does not violate due process principles." 435 S.W.3d at 187. We also noted in *Long* that Panel members "receive no compensation, other than reimbursement for travel expenses, for sitting as the adjudicatory body in a disciplinary matter." *Id.* at 188. Further, in *Moncier*, we highlighted the extensive procedural protections Tennessee's attorney discipline system affords attorneys. 406 S.W.3d at 156. Ms. Reguli's constitutional objections lack merit.

Ms. Reguli has submitted as supplemental authority *North Carolina Board of Dental Examiners v. F.T.C.*, ___ U.S. ___, 135 S. Ct. 1101 (2015), in support of her claim that Tennessee's attorney discipline system is unconstitutional and violative of antitrust laws. The *North Carolina Board of Dental Examiners* decision does not support her constitutional claims. Ms. Reguli did not raise issues of antitrust violations before the trial court or the Panel. Any such claim is now waived.

## IV.

The Panel's findings of fact and conclusions of law are affirmed. The Panel's sanction is reinstated, with the additional requirement that Ms. Reguli make restitution to Mr. Castleman in the amount of $7,800. Accordingly, Ms. Reguli is suspended from the practice of law in Tennessee for eleven months and twenty-nine days, all of which Ms. Reguli may serve on probation subject to the conditions that Ms. Reguli (1) pay restitution to Mr. Castleman in the amount of $7,800; (2) submit to a probation monitor in accordance with the Panel's judgment; and (3) submit to an evaluation by

TLAP and comply with any monitoring requirement TLAP deems necessary.  Costs of this appeal are taxed to Connie Reguli and her surety, for which execution may issue if necessary.


_____
SHARON G. LEE, CHIEF JUSTICE