IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 6, 2022

## BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE v. CANDES VONNIEST PREWITT

**Direct Appeal from the Chancery Court for Davidson County**
**No. 21-0321-I          Don R. Ash, Senior Judge**

_____

**No. M2021-01141-SC-R3-BP**

_____

This is an appeal of a trial court's judgment affirming a decision of a hearing panel of the Board of Professional Responsibility. The hearing panel found that an attorney had violated multiple Rules of Professional Conduct and imposed a thirty-day suspension from the practice of law with conditions on reinstatement. After careful review, we affirm the decision of the hearing panel and the judgment of the trial court.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Chancery Court Affirmed; Decision of the Hearing Panel Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and JEFFREY S. BIVINS, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

Benjamin K. Raybin, Nashville, Tennessee, for the appellant, Candes Vonniest Prewitt.

James W. Milam, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

### I.

*Factual Background*

In 2012, Candes Vonniest Prewitt was licensed to practice law in Tennessee. In December of that year, she and Demetrius Tucker began an on-and-off romantic relationship that lasted for several years. In July 2014, while Mr. Tucker was working as a security guard for a Nashville night club, a disgruntled patron shot him. Mr. Tucker was

seriously injured and incurred over $500,000 in medical expenses. A co-worker, Dionage Harris, was also injured in the incident. Both men retained Ms. Prewitt to represent them in a personal injury lawsuit. Ms. Prewitt agreed to handle the lawsuit under a contingency fee agreement of one-third of any damages recovered.

In July 2015, Ms. Prewitt filed a complaint on behalf of Mr. Tucker and Mr. Harris against their employer, Robert Higgins d/b/a WKND Lounge, and the premises owner, Dialysis Clinic, Inc. ("the defendants"), in the Davidson County Circuit Court.[1] The suit alleged that the defendant employer was negligent by failing to report to law enforcement that the man who shot Mr. Tucker had been ejected from the club earlier in the evening and had threatened to return and kill everyone.[2]

After the lawsuit was filed, Ms. Prewitt and Mr. Tucker continued their on-and-off romantic relationship. Ms. Prewitt did not advise Mr. Tucker of a potential conflict of interest based on their personal relationship and did not have him sign a written conflict waiver.

By February 15, 2018, Ms. Prewitt was required to file plaintiffs' expert disclosures under Tennessee Rule of Civil Procedure 26.02(4). This filing deadline was set five months earlier during an August 31, 2017 discovery conference. Ms. Prewitt filed the disclosures on February 15. The defendants then moved to exclude two of the plaintiffs' expert witnesses—a security expert designated to testify on the liability issue and a chiropractor designated to testify about Mr. Harris's injuries. In April 2018, the circuit court granted the motion, excluding the two expert witnesses after finding that the expert disclosures provided by Ms. Prewitt were deficient under Rule 26.02(4).[3] The disclosures failed to

---

[1] In December 2016, Ms. Prewitt filed an amended complaint adding Suite 1703, LLC as a defendant. The amended complaint alleged that Suite 1703 and/or Mr. Higgins employed Mr. Tucker and Mr. Harris as security guards at WKND Lounge, and that WKND Lounge was owned by Mr. Higgins and/or Suite 1703.

[2] The only allegation against Dialysis Clinic, Inc., was that it owned the land and the building where Mr. Tucker and Mr. Harris were injured.

[3] A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. In addition, upon request in an interrogatory, for each person so identified, the party shall disclose the witness's qualifications (including a list of all publications authored in the previous ten years), a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

Tenn. R. Civ. P. 26.02(4)(A)(i).

include the substance of the facts and opinions to which the witnesses were expected to testify and a summary of the grounds for each opinion; failed to list the witnesses' qualifications, publications for the previous ten years, and cases in which they had testified as an expert in the previous four years; and failed to disclose the compensation to be paid to the witnesses for their work on the case. Ms. Prewitt did not inform her clients of the circuit court's ruling excluding their expert witnesses.

In late April 2018, the defendants moved for summary judgment, arguing that they did not owe a duty of care to the plaintiffs because the shooting was not foreseeable. Ms. Prewitt told neither Mr. Tucker nor Mr. Harris that summary judgment motions had been filed, and she did not prepare any response to the motions. Instead, in May 2018, she moved to withdraw from the case and postpone the summary judgment hearing. By this time, Ms. Prewitt was expecting a child with Mr. Tucker, and their romantic relationship had ended. As grounds for her motion to withdraw, Ms. Prewitt stated that "the communication between counsel and [the p]laintiffs ha[d] broken down." She mentioned neither her pregnancy nor her personal relationship with Mr. Tucker. Ms. Prewitt represented to the circuit court that her clients' interests would not be materially adversely affected by her withdrawal. Ms. Prewitt did not include her clients on the certificate of service for the motion to withdraw and did not send them copies of the motion. Ms. Prewitt claimed she told them both by telephone that she intended to withdraw from the case. On July 3, 2018, the circuit court entered an order allowing Ms. Prewitt to withdraw. The circuit court gave Mr. Tucker and Mr. Harris thirty days to obtain new counsel and continued the summary judgment hearing to August 10, 2018.

After Ms. Prewitt told Mr. Tucker she would no longer represent him, he consulted another attorney about taking over the case. The attorney asked Mr. Tucker to get him the case file and information about any lien Ms. Prewitt intended to assert for her work on the case. When Ms. Prewitt submitted a four-page document itemizing her work at $500 per hour, billed in quarter-hour increments and totaling $121,750, the attorney declined to represent Mr. Tucker. After some discussion with Mr. Tucker in an exchange of text messages, Ms. Prewitt agreed to release the lien in exchange for half of Mr. Tucker's recovery in the lawsuit. But when Ms. Prewitt turned over the case file to Mr. Tucker, she gave him an unconditional release of the lien. The attorney then agreed to take the case.

When Mr. Tucker's attorney reviewed the case file, he found that it was missing transcripts of the three depositions that had been taken, as well as a video recording of Mr. Tucker's shooting.[4] The attorney also learned that no depositions of medical or security

---

[4] Ms. Prewitt at first told the new attorney the file she turned over to Mr. Tucker contained everything she had pertaining to the case. Mr. Tucker had the name of the court reporter who had transcribed the depositions, and he had to purchase additional copies of the missing transcripts. The video of the shooting was found in Mr. Harris's file.

experts had been taken, that the circuit court had excluded two expert witnesses, and that summary judgment motions were pending and set for hearing in less than thirty days.[5] The attorney obtained a continuance of the hearing and filed a response to the summary judgment motions.

In October 2018, the circuit court heard the defendants' motions for summary judgment. In January 2019, the circuit court granted the motions for summary judgment. The basis for the circuit court's ruling was the plaintiffs' failure to establish that the defendants owed a duty of care based on a foreseeable risk of harm of criminal acts. The circuit court noted that the plaintiffs had not provided evidence of any criminal activity in the immediate vicinity of the night club.

*Disciplinary Proceedings*

In January 2019, Mr. Tucker submitted a disciplinary complaint to the Board against Ms. Prewitt. In November 2019, the Board filed a petition for discipline against Ms. Prewitt, alleging that in her representation of Mr. Tucker she violated Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.7 (Conflict of Interest: Current Clients), 1.16 (Declining or Terminating Representation), and 8.4 (Misconduct). Ms. Prewitt denied any misconduct. After a July 15, 2020 evidentiary hearing, the hearing panel issued a written decision on August 14, 2020, finding that Ms. Prewitt had violated Rules 1.1, 1.3, 1.7, 1.16, and 8.4(a). The hearing panel imposed a thirty-day active suspension, and as conditions for reinstatement, Ms. Prewitt had to complete ten extra hours of ethics continuing legal education and engage a practice monitor for six months.

After the panel issued its ruling, the Board filed an application to recover its costs under Tennessee Supreme Court Rule 9, section 31.3(a).[6] Ms. Prewitt opposed the Board's application, contending the disciplinary hearing had been improperly conducted based on

---

[5] Ms. Prewitt said she told the new attorney about the pending motions during a telephone call when he first became involved in the case; he said he found them when he was reviewing the file. The hearing panel concluded that Ms. Prewitt failed to tell the new attorney about the pending motions for summary judgment.

[6] In the event that a judgment of . . . suspension . . . results from formal proceedings, Disciplinary Counsel shall within fifteen days from the hearing panel's submission of such judgment pursuant to Section 15.3 make application to the hearing panel for the assessment against the respondent . . . of the necessary and reasonable costs of the proceedings, including court reporter's expenses for appearances and transcription of all hearings and depositions, the expenses of the hearing panel in the hearing of the cause, and the hourly charge of Disciplinary Counsel in investigating and prosecuting, and shall serve a copy of such application on respondent . . . .

Tenn. Sup. Ct. R. 9, § 31.3(a).

an alleged conflict of interest of a hearing panel member. The hearing panel issued an order giving Ms. Prewitt fourteen days to fully substantiate the conflict of interest, including when she discovered it, and to file a brief in support of the relief she was seeking. Ms. Prewitt filed no response. The hearing panel granted the Board's application for costs.

Under Tennessee Supreme Court Rule 9, section 33.1(a), Ms. Prewitt appealed the hearing panel's decision to the Chancery Court for Davidson County. The trial court allowed Ms. Prewitt to present testimony regarding her claim that a hearing panel member had a conflict of interest. In September 2021, the trial court issued its order affirming the hearing panel's decision. The trial court ruled that Ms. Prewitt had waived the issue of a panel member's alleged conflict of interest by failing to comply with the hearing panel's order to substantiate the claimed conflict, and that she also waived her objection to costs by failing to raise an objection to the hearing panel. Ms. Prewitt appealed to this Court under Tennessee Supreme Court Rule 9, section 33.1(d).[7]

## II.

This Court has the inherent power "to regulate and supervise the practice of law in Tennessee." *Dunlap v. Bd. of Pro. Resp.*, 595 S.W.3d 593, 606 (Tenn. 2020) (quoting *Hyman v. Bd. of Pro. Resp.*, 437 S.W.3d 435, 444 (Tenn. 2014)). Included in this inherent power is "the ultimate responsibility of enforcing our rules of professional conduct" and sanctioning attorneys who violate those rules. *Bd. of Pro. Resp. v. Sheppard*, 556 S.W.3d 139, 146 (Tenn. 2018) (citing *Garland v. Bd. of Pro. Resp.*, 536 S.W.3d 811, 816 (Tenn. 2017)).

The Board of Professional Responsibility "derives its authority and functions from this Court." *Dunlap*, 595 S.W.3d at 606 (citing *Garland*, 536 S.W.3d at 816). An attorney charged with disciplinary violations is entitled to an evidentiary hearing before a Board of Professional Responsibility hearing panel to determine whether disciplinary action is warranted and, if so, the appropriate sanction. *Id.* (citing *Bd. of Pro. Resp. v. Justice*, 577 S.W.3d 908, 923 (Tenn. 2019)). The hearing panel's decision may be appealed to the circuit or chancery court, which reviews the decision "on the transcript of the evidence before the hearing panel and its findings and judgment." *Id.* (quoting Tenn. Sup. Ct. R. 9, § 33.1(b)). The trial court may reverse or modify the hearing panel's decision if it determines that the rights of the party seeking review have been prejudiced by findings, inferences, conclusions, or decisions of the hearing panel that were "arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion" or "unsupported by evidence which is both substantial and material in light of the entire record." *Id.* (quoting Tenn. Sup. Ct. R. 9, § 33.1(b)).

---

[7] "Either party dissatisfied with the decree of the [trial] court may prosecute an appeal directly to [this] Court. The appeal shall be determined upon the transcript of the record from the [trial] court, which shall include the transcript of evidence before the hearing panel . . . ." Tenn. Sup. Ct. R. 9, § 33.1(d).

"A decision is arbitrary or capricious if it 'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Meehan v. Bd. of Pro. Resp.*, 584 S.W.3d 403, 413 (Tenn. 2019) (quoting *Hughes v. Bd. of Pro. Resp.*, 259 S.W.3d 631, 641 (Tenn. 2008)). An abuse of discretion occurs when the hearing panel "appl[ies] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id.* (quoting *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d 408, 418 (Tenn. 2015)) (alterations in original). The reviewing court determines whether the hearing panel's decision is supported by substantial and material evidence by examining "whether the evidence furnishes a reasonably sound factual basis for the decision being reviewed." *Sheppard*, 556 S.W.3d at 146 (quoting *Sallee v. Bd. of Pro. Resp.*, 469 S.W.3d 18, 36 (Tenn. 2015)).

The trial court reviews questions of law de novo with no presumption of correctness, but does not substitute its judgment for that of the hearing panel on questions of fact. *Napolitano v. Bd. of Pro. Resp.*, 535 S.W.3d 481, 496 (Tenn. 2017) (citing *Reguli*, 489 S.W.3d at 417). Thus, "where reasonable minds can disagree," the court will uphold the hearing panel's ruling. *Meehan*, 584 S.W.3d at 413 (quoting *Sheppard*, 556 S.W.3d at 146). A party dissatisfied with the decision of the trial court may appeal directly to this Court. *Beier v. Bd. of Pro. Resp.*, 610 S.W.3d 425, 436 (Tenn. 2020) (quoting *Bd. of Pro. Resp. v. MacDonald*, 595 S.W.3d 170, 181 (Tenn. 2020)). This Court applies the same standard of review as the trial court. *Napolitano*, 535 S.W.3d at 496.

On appeal, Ms. Prewitt challenges the hearing panel's findings of misconduct and the sanctions imposed.

*Violation of Rule 1.1 (Competence)*

The hearing panel found that Ms. Prewitt violated Rule 1.1[8] by failing to make proper expert disclosures, leading to the exclusion of two of the plaintiffs' expert witnesses, and by failing to advise Mr. Tucker to file a claim for workers' compensation rather than a personal injury lawsuit. The hearing panel concluded that these failures showed a lack of legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation of Mr. Tucker.

Ms. Prewitt asserts that the hearing panel erred by finding she violated Rule 1.1 based on her failure to properly disclose expert witnesses in the personal injury lawsuit. Under Tennessee Rule of Civil Procedure 26.02(4)(A)(i), expert disclosures must "state the subject matter" of the expert's testimony, as well as "the substance of the facts and

---

[8] "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Tenn. Sup. Ct. R. 8, RPC 1.1.

opinions to which the expert is expected to testify and a summary of the grounds for each opinion." They must also disclose the expert's qualifications, "including a list of all publications authored in the previous ten years," cases in which the expert testified in the last four years, and how much the expert will be paid for work in the current case. *Id.*

The expert disclosures Ms. Prewitt provided did not meet the requirements of Rule 26.02(4)(A)(i). Her one-paragraph disclosure of the liability expert stated that he "specialize[d] in all aspects of the provision of security services, as well as safety." It also stated that grounds for his "future opinion" would "include, but . . . not be limited to, the review of security policies and procedures, discovery responses, and all other materials produced by Defendants related to the subject shooting incident." The liability expert was expected to "opine on the subject of liability, particularly duty, breach and causation." This disclosure did not state the substance of the expert's opinions or the grounds for those opinions. It also failed to list the expert's qualifications, previous cases in which he had testified, and his compensation for testifying in Mr. Tucker's case. The disclosures regarding Mr. Harris's chiropractor were similarly deficient.[9]

Ms. Prewitt does not claim that the expert disclosures she provided complied with Rule 26.02(4)(A)(i). Instead, she argues that all the experts were disclosed in the same manner, but only two of them were disqualified. She contends the hearing panel's finding was arbitrary and capricious because the other experts were not excluded. This argument is disingenuous, however, since the defendants moved to exclude only these two experts. The circuit court's ruling in no way suggests the remaining disclosures were adequate, only that they were not the subject of a motion to exclude.[10]

Ms. Prewitt also contends the Board did not show that Mr. Tucker's case was prejudiced by the exclusion of the only expert witness designated to establish liability.[11]

---

[9] Ms. Prewitt contends the hearing panel improperly considered the exclusion of the chiropractor designated to testify about Mr. Harris's injuries. She claims she did not have notice that she would be subject to discipline related to her representation of Mr. Harris since he did not file a complaint with the Board. Yet the petition for discipline refers to the exclusion of more than one expert witness, and both experts were excluded by the same court order on identical grounds—Ms. Prewitt's failure to comply with Rule 26.02(4).

[10] The circuit court's order granting the motion states that "[d]efendant . . . has filed a motion to exclude [two of the five individuals identified by Ms. Prewitt] as expert witnesses on behalf of Plaintiffs in this case."

[11] According to the expert disclosure, this witness "specialize[d] in all aspects of the provision of security services" and was expected to testify "on the subject of liability, particularly duty, breach and causation regarding the said shooting incident that resulted in the serious bodily injury of Plaintiffs." The other witnesses identified in the expert disclosures were three of Mr. Tucker's treating health care providers and Mr. Harris's chiropractor, who were designated to testify about the plaintiffs' injuries and damages.

She claims the hearing panel's finding was arbitrary, capricious, and unsupported by the record because the Board did not offer evidence that Mr. Tucker's case would have survived summary judgment had the liability expert not been excluded. We disagree. First, it cannot reasonably be argued that excluding the only expert witness on liability did not cause harm or potential harm to Mr. Tucker. Second, even if there was no prejudice to Mr. Tucker, Ms. Prewitt was not relieved of her ethical responsibilities under the Rules of Professional Conduct. *See, e.g.*, *In re Groom*, 249 P.3d 976, 983 (Or. 2011) ("[T]he fact that a lawyer's failure to communicate does not prejudice the client does not relieve the lawyer of the ethical duty [under Rule of Professional Conduct 1.4] to communicate.").

Ms. Prewitt also contends the hearing panel should not have relied solely on the circuit court's ruling excluding the expert witnesses because that ruling was never subject to appellate review. This argument also misses the mark. The expert disclosures were facially deficient because of noncompliance with Rule 26.02(4)(A)(i). Ms. Prewitt did not provide the information required, and her statements to the hearing panel and her filings in Mr. Tucker's personal injury lawsuit show a fundamental misunderstanding of the requirements for disclosing expert witnesses in litigation.[12] She asserts that the Board did not prove she violated the standard of care for a reasonable attorney in her expert disclosures. But this is a disciplinary case, not a legal malpractice action requiring expert proof on the standard of care. Here, Rule 26.02(4)(A)(i) establishes what was required.

Finally, to address Ms. Prewitt's argument that the Board has cited no authority stating that an attorney's decision not to properly disclose an expert is "inherently unethical" or that her decision not to properly disclose an expert was unethical, we need only look to the rule itself. Under Rule 1.1, "[c]ompetent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Tenn. Sup. Ct. R. 8, RPC 1.1. Comment 5 to that rule states: "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and the use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation." Tenn. Sup. Ct. R. 8, RPC 1.1 cmt. 5; *see also People v. Fager*, 925 P.2d 280, 282 (Colo. 1996) (finding that failure to comply with rules of civil procedure resulting in exclusion of expert and lay witnesses violated Colorado Rule of Professional Conduct 1.1—"a lawyer shall provide competent representation to a client"); *In re Nwadike*, 905 A.2d 221, 227 (D.C. 2006) (holding that "failure to file a timely and complete" expert disclosure violated D.C. Rule of Professional

---

[12] Ms. Prewitt asserted before the hearing panel that the circuit court's exclusion of the expert witnesses was inexplicable because her expert disclosures were all substantially identical, but only two were excluded. She stated that she could not control whether the judge ruled against her, and she did not recognize or acknowledge the deficiencies in her disclosures that the circuit court expressly spelled out in its order.

Conduct 1.1(b));[13] *In re Lattimer*, 223 A.3d 437, 443, 448–49 (D.C. 2020) (finding that failure "to make proper expert disclosures in a timely manner" resulting in dismissal of the case was a violation of Virginia Rules of Professional Conduct 1.1 and 1.3(a)).[14]

Competent practitioners familiarize themselves with the Rules of Civil Procedure and work diligently to comply with them. Ms. Prewitt did not. The hearing panel's finding that Ms. Prewitt's failure to provide expert disclosures in compliance with Rule 26.02(4)(A)(i) violated Rule 1.1 was not arbitrary or capricious and is supported by substantial and material evidence.

The hearing panel also found that Ms. Prewitt violated Rule 1.1 by failing to advise Mr. Tucker to file a workers' compensation claim instead of a personal injury lawsuit against his employer.[15] The attorney who represented Mr. Tucker after Ms. Prewitt withdrew testified that Mr. Tucker had a strong workers' compensation claim, that Mr. Tucker could have received payment for his medical bills, and that there was no indication that Ms. Prewitt had considered filing a workers' compensation claim on his behalf. The hearing panel found that based on advice and direction from Ms. Prewitt, Mr. Tucker did not pursue a workers' compensation claim and forfeited any right to pursue a claim for payment of his medical bills and other expenses.

Ms. Prewitt argues the Board's petition did not specifically allege her failure to pursue a workers' compensation claim as a basis for discipline. While the Board did not specifically allege Ms. Prewitt failed to properly advise Mr. Tucker about his options under the workers' compensation law, Mr. Tucker, his attorney, and Ms. Prewitt testified about the advice she gave regarding the workers' compensation claim. Ms. Prewitt objected to only a portion of the attorney's testimony. We need not decide, however, whether the Board's petition was sufficient to put Ms. Prewitt on notice of the workers' compensation-related charges or whether she waived any deficiency by not objecting to the testimony. There is substantial and material evidence to support the hearing panel's finding of a violation of Rule 1.1 based on Ms. Prewitt's failure to provide adequate expert

---

[13] D.C. Rule of Professional Conduct 1.1(b) requires "an attorney to 'serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.'" *Nwadike*, 905 A.2d at 222.

[14] "Virginia Rule 1.1 requires lawyers to 'provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness[,] and preparation reasonably necessary for the representation.'" *Lattimer*, 223 A.3d at 443 (alteration in original). "Virginia Rule 1.3(a) requires attorneys to 'act with reasonable diligence and promptness in representing a client.'" *Id.*

[15] Workers' compensation is the exclusive remedy for an employee to recover damages from an employer for personal injury sustained on the job. Tenn. Code Ann. §§ 50-6-103(a), -108(a) (2014). An attorney's fee in a workers' compensation case is capped at twenty percent of the amount awarded to the injured employee. Tenn. Code Ann. § 50-6-226(a)(1) (2014 & Supp. 2021).

disclosures. Thus, the issue of whether the hearing panel erred in finding a Rule 1.1 violation based on Ms. Prewitt's failure to advise about filing a workers' compensation claim is pretermitted.

*Violation of Rule 1.3 (Diligence)*

The hearing panel found that Ms. Prewitt violated Rule 1.3[16] by failing to make proper expert disclosures, by failing to promptly withdraw when she realized her personal relationship with Mr. Tucker impacted her ability to represent him in the personal injury lawsuit, and by failing to advise Mr. Tucker to pursue a workers' compensation claim.

Ms. Prewitt advances the same arguments against the hearing panel's finding that she violated Rule 1.3 by failing to make timely and adequate expert disclosures that she asserted about the violation of Rule 1.1. As discussed above, Ms. Prewitt did not timely and diligently comply with Tennessee Rule of Civil Procedure 26.02(4)(A)(i) when she prepared the expert disclosures. She had five months to prepare the expert disclosures, yet the disclosures she filed on the last day were inadequate and not in compliance with Rule 26.02(4)(A)(i). Her failure to review and follow Rule 26.02(4)(A)(i) shows a lack of commitment and dedication to Mr. Tucker's interests. *See* Tenn. Sup. Ct. R. 8, RPC 1.3 cmt. 1 ("A lawyer must . . . act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."); *Fager*, 925 P.2d at 282 (finding a violation of Colorado Rule of Professional Conduct 1.3—"a lawyer shall not neglect a legal matter entrusted to that lawyer"—when witnesses were excluded due to the lawyer's failure to comply with procedural rules); *Lattimer*, 223 A.3d at 448–49 (holding that failure to timely and properly disclose expert witnesses resulting in dismissal of the lawsuit was a violation of Virginia Rule of Professional Conduct 1.3(a).[17] The hearing panel's finding that Ms. Prewitt's failure to make adequate expert disclosures violated Rule 1.3 was neither arbitrary nor capricious and is supported by substantial and material evidence.

Ms. Prewitt also argues the hearing panel erred in finding that she violated Rule 1.3 when she failed to act with promptness to withdraw after she realized her personal relationship with Mr. Tucker hindered her ability to represent him in the lawsuit. She claims she represented Mr. Tucker "until [she] couldn't anymore," and the record contains no evidence that there "was a certain moment" when Ms. Prewitt should have withdrawn but failed to do so.

---

[16] "A lawyer shall act with reasonable diligence and promptness in representing a client." Tenn. Sup. Ct. R. 8, RPC 1.3.

[17] *See supra* note 14.

The record does not state the date that Ms. Prewitt's personal relationship with Mr. Tucker ended. But Ms. Prewitt's itemized time records show she spent no time responding to the summary judgment motions between the time the motions were filed on April 24 and 25, 2018, and when she moved to withdraw on May 23, 2018.[18] The circuit court's order granting Ms. Prewitt's motion to withdraw was entered July 3, 2018. By that time, the summary judgment motions had been pending for over sixty days, Ms. Prewitt had prepared no responses, and she had not notified her clients that summary judgment motions had been filed.[19]

Comment 1 to Rule 1.3 states that "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." Tenn. Sup. Ct. R. 8, RPC 1.3 cmt. 1. When Ms. Prewitt moved to withdraw from the case after her personal relationship with Mr. Tucker ended, she knew summary judgment motions had been filed, that she had done nothing to oppose the motions, and that the motions were set for hearing. The circuit court re-set the summary judgment hearing for August 10, 2018. Under the local rules of court, the plaintiffs' responses were due the Monday before the hearing. Thus, Ms. Prewitt's delay in withdrawing from the case gave Mr. Tucker only about thirty days to retain new counsel and respond to the pending dispositive motions. Mr. Tucker was ultimately able to do both, but Ms. Prewitt's delay in withdrawing from the case while she ignored the summary judgment motions was not prompt and diligent representation as required by Rule 1.3. *See, e.g.*, *Lattimer*, 223 A.3d at 443 ("[A] client's interests often can be adversely affected by the passage of time . . . ." (quoting Va. R. Pro. Conduct 1.3 cmt. 3)); *In re Disciplinary Action Against Swanson*, 967 N.W.2d 644, 654 (Minn. 2021) ("Perhaps no professional shortcoming is more widely resented than procrastination." (quoting Minn. R. Pro. Conduct 1.3 cmt. 3)). In sum, the hearing panel's decision that Ms. Prewitt violated Rule 1.3 was neither arbitrary nor capricious and is supported by substantial and material evidence.

Finally, Ms. Prewitt challenges the hearing panel's finding that her failure to advise Mr. Tucker to file a claim for workers' compensation rather than a personal injury lawsuit violated Rule 1.3. Because we have already found that there is substantial and material evidence to support the hearing panel's finding of Ms. Prewitt's other violations of Rule

---

[18] There is no notice of hearing in the record, but Ms. Prewitt's motion to withdraw also contains a motion to continue the hearing on the summary judgment motions, suggesting that the hearing had been set. The circuit court's order granting Ms. Prewitt's motion to withdraw also shows that the motions were set for hearing, stating that the summary judgment hearing was continued until August 10, 2018.

[19] The attorney who took over the case described finding the summary judgment motions "hidden along with other things in an envelope" stuffed in with what looked "just like garbage emails" between counsel.

1.3, we need not address the issue of her reasonable diligence in not advising Mr. Tucker to pursue a workers' compensation claim. Thus, this issue is pretermitted.

*Violation of Rule 1.7 (Conflict of Interest: Current Clients)*

The hearing panel determined that Ms. Prewitt violated Rule 1.7[20] because her personal relationship with Mr. Tucker significantly limited her ability to advise and represent him objectively and conflicts in their personal relationship interfered with their attorney-client relationship. The hearing panel concluded Ms. Prewitt should have disclosed to Mr. Tucker that their personal relationship could interfere with her representation in the lawsuit, and she should have obtained his informed written consent to waive the potential conflict.[21] The hearing panel also found that Ms. Prewitt violated Rule 1.7 because she put her own interests ahead of Mr. Tucker's by asserting a lien for her fees after she withdrew and by advising him to file a personal injury lawsuit instead of a workers' compensation claim.

Ms. Prewitt challenges the hearing panel's finding that she had a concurrent conflict of interest in representing Mr. Tucker because of their personal relationship. Under Rule 1.7(a)(2), "[a] concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). Although the rule does not define "personal interest," Ms. Prewitt argues, based on Comment 10 to the rule, that "personal interest" refers to a pecuniary interest.[22] While it is true that Comment 10 appears under

---

[20] "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2).

[21] Notwithstanding the existence of a concurrent conflict of interest . . . , a lawyer may represent a client if:

    (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2)    the representation is not prohibited by law;
    (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4)    each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.7(b).

[22] Comment 10 states:

- 12 -

the heading "Personal Interest Conflicts," Comments 12 and 12a, which appear in the comments under the heading "Sexual Relations Between Lawyer and Client," identify another potential source of a personal interest conflict.

Comment 12 emphasizes the fiduciary relationship between lawyer and client "in which the lawyer occupies the highest position of trust and confidence." Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. 12. It explains that given this fiduciary duty, "combining a professional relationship with any intimate personal relationship may raise concerns about conflict of interest" and about "impairment of the judgment of both lawyer and client." *Id.* Comment 12 specifically states that "[t]hese concerns may be particularly acute when a lawyer has a sexual relationship with a client," which "may create a conflict of interest under [Rule 1.7(a)(2)] or violate other disciplinary rules, and it generally is imprudent even in the absence of an actual violation of these Rules." *Id.*

Comment 12a expands on this: "[T]he client's dependence on the lawyer's knowledge of the law is likely to make the relationship between the lawyer and client unequal." Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. 12a. This inequality may be exacerbated by a sexual relationship, which "can involve unfair exploitation of the lawyer's fiduciary role and thereby violate the lawyer's basic obligation not to use the trust of the client to the client's disadvantage." *Id.* Also, there is "a significant risk that the lawyer's emotional involvement will impair the lawyer's independent professional judgment." *Id.* Finally, "[t]he client's own emotional involvement may make it impossible for the client to give informed consent to these risks." *Id.*

The concerns expressed in Comments 12 and 12a are reflected in Mr. Tucker's testimony before the hearing panel. When asked how he came to be represented by Ms. Prewitt in the personal injury lawsuit, Mr. Tucker explained that Ms. Prewitt was angry that he consulted other attorneys and did not come to her first since she was his girlfriend at the time. Mr. Tucker also said he "kind of felt like [he] was pressured into" asking Ms. Prewitt to represent him because she was "trying to make [him] feel bad because [he] didn't want to use her." Mr. Tucker stated that because Ms. Prewitt was new to the practice of law, he "didn't really think she knew what she was doing" and "really didn't want to go

---

The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client objective advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest.

Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. 10.

with her," but he agreed to let Ms. Prewitt handle the case because he "felt bad" and told himself "she had [his] best interest at hand." Ms. Prewitt, on the other hand, testified that Mr. Tucker "begged" her to represent him in the personal injury case because he could not find another lawyer to take the case and the statute of limitations deadline was approaching. The hearing panel did not make a specific finding of fact or credibility on this conflicting testimony but implicitly resolved the conflicts against Ms. Prewitt by its finding that she violated Rule 1.7.

Mr. Tucker also testified that he did not know summary judgment motions had been filed because he "wasn't real familiar with the case." He "just left it in [Ms. Prewitt's] hands pretty much because [he] thought she would take care of [him] since . . . [they] were at a good place at some times." Mr. Tucker explained that he took Ms. Prewitt's advice on filing a personal injury lawsuit rather than a workers' compensation claim because "[he] figured at the time [they] were . . . cool" because "[they] were having sex" and he thought she "loved [him] or liked [him]." Mr. Tucker thought Ms. Prewitt would have his best interest in mind, but in hindsight he "[didn't] know if that was true."

Regardless of the conflicting accounts of how the representation began, Mr. Tucker's testimony shows that he put his trust in Ms. Prewitt because of their personal relationship. When that relationship ended, Ms. Prewitt ended the attorney-client relationship as well—without proper notice to Mr. Tucker and without attention to the summary judgment motions pending in the lawsuit. These are the types of concerns expressed in the comments to Rule 1.7 about intimate personal relationships between lawyer and client. *See* Tenn. Sup. Ct. R. 8, RPC 1.7 cmts. 12, 12a; *see also In re Vogel*, 482 S.W.3d 520, 533 (Tenn. 2016) (holding that a concurrent conflict of interest existed under Rule 1.7 due to the sexual relationship between lawyer and client); *In re Robinson*, 209 A.3d 570, 575, 584 (Vt. 2019) (holding that a lawyer violated Vermont Rule of Professional Conduct 1.7(b) even though he believed he could ethically have a sexual relationship with his client); *Chief Disciplinary Couns. v. Zelotes*, 98 A.3d 852, 858 (Conn. App. Ct. 2014) ("The risk . . . under [Connecticut Rule of Professional Conduct] 1.7(a)(2) . . . is that [the] intimacy and . . . love that the [lawyer has] for [the] client might . . . terminate[] or its level diminish[], bringing into question the future level of competency, diligence and detachment of the [lawyer]."); *People v. Beecher*, 224 P.3d 442, 450 (Colo. O.P.D.J. 2009) (finding that even if the lawyer's relationship with the client was not sexual, their close personal relationship caused him to lose the objectivity and independent judgment necessary to represent the client).

Ms. Prewitt argues the Board points to no authority that continuing an existing sexual relationship upon commencement of the representation creates a conflict under Rule 1.7. She claims the Board's reliance on *Vogel* is misplaced. There, the lawyer's sexual relationship began after the commencement of the representation and was coerced by the lawyer, whose client was a criminal defendant who felt she had to acquiesce because the lawyer "held [her] future in his hands." *Vogel*, 482 S.W.3d at 524–25 (alteration in

original). Ms. Prewitt's sexual relationship with Mr. Tucker, on the other hand, was not coercive and existed before she agreed to represent him in the personal injury case. But nothing in Rule 1.7 or in the comments shows that the rule only applies to relationships that begin during the representation. Comment 12 cautions that "combining a professional relationship with *any* intimate personal relationship may raise concerns about conflict of interest." Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. 12 (emphasis added).

Ms. Prewitt also claims there was no concurrent conflict of interest when she first agreed to represent Mr. Tucker in his lawsuit, but only a "potential" conflict. Thus, she argues, there was no "significant risk" of a conflicting "personal interest" that would "materially limit[]" her responsibilities in the case. Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). But Ms. Prewitt admitted to the hearing panel that there were times during her three-year relationship with Mr. Tucker that they did not talk—sometimes for weeks—because she did not want to talk to him. She characterized it as "nothing that serious" and maintained that the relationship "didn't become volatile until it ended." Ms. Prewitt stated that for "the most part," they did not go long stretches without talking while she was representing Mr. Tucker in the lawsuit.

Mr. Tucker similarly described the relationship as on-again-off-again, stating that he and Ms. Prewitt "just kept going back and forth" and that they sometimes would not see or talk to each other for months until they got back together. Mr. Tucker testified that they reestablished a relationship soon after Ms. Prewitt filed the complaint in his lawsuit, but it did not last long because they "would be with each other for a set amount of time and then it ha[d] to end" because they "kept bumping heads or whatever." Their relationship was "off and on through[out] the case."

There were also conflicts between Mr. Tucker and Ms. Prewitt directly related to the representation. According to Mr. Tucker, as the statute of limitations was approaching, Ms. Prewitt "got mad" at him because he wanted to file a claim for workers' compensation instead of a lawsuit. Ms. Prewitt "didn't really like that," and they argued about it. Mr. Tucker also described a conflict between them at one point in the litigation when he wanted to accept a $25,000 settlement offer, but Ms. Prewitt "wouldn't let" him. She was angry because he just wanted to take the money, and she told Mr. Tucker "no"—it was "all or nothing." Mr. Tucker admitted that $25,000 would not have covered his medical expenses, but he did not care because he "just wanted to stop" and "didn't want to see [Ms. Prewitt's] face no more." In the end, Mr. Tucker stated that although he did not know Ms. Prewitt was moving to withdraw, he "knew she was not about to continue doing the case because one, she was mad at [him]; two, she was pregnant; three, she just was outright . . . in a mode where she hate[d] [him]." When asked if this was based on personal issues between them, Mr. Tucker said, "Yeah. I'm 100 percent sure it was personal."

Ms. Prewitt asserts that her and Mr. Tucker's personal interests at the outset of the representation were aligned. She wanted to get Mr. Tucker the greatest possible recovery

- 15 -

so she could earn a good fee. Ms. Prewitt distinguishes this from the situation in *Vogel*, noting that there the lawyer's personal interest depended solely on his desire for a sexual relationship with the client. *See* 482 S.W.3d at 524–29. But, as set forth above, besides her pecuniary interest in the case, Ms. Prewitt had a personal interest in her romantic relationship with Mr. Tucker that caused a conflict. *See* Tenn. Sup. Ct. R. 8, RPC 1.7(a); Tenn. Sup. Ct. R. 8, RPC 1.7 cmts. 12, 12a.

There is ample evidence in the record of the on-and-off nature of Ms. Prewitt's relationship with Mr. Tucker both before and during the representation and of the disputes they had about the representation from the beginning. Thus, the evidence supports the hearing panel's finding that Ms. Prewitt had a concurrent conflict of interest that required disclosure to Mr. Tucker and his informed consent regardless of Ms. Prewitt's subjective belief that there was no conflict. *See Beecher*, 224 P.3d at 450 (stating that the lawyer's subjective belief there was no conflict was unreasonable); *Robinson*, 209 A.3d at 575 (holding that the lawyer violated Vermont Rule of Professional Conduct 1.7 even though he did not think his sexual relationship with his client presented a conflict of interest). The hearing panel's finding of a concurrent conflict of interest based on Ms. Prewitt's personal relationship with Mr. Tucker was not arbitrary or capricious and is supported by substantial and material evidence.

Ms. Prewitt claims she did not comply with Rule 1.7(b) because she did not believe there was a conflict. But when asked at the disciplinary hearing whether she would "agree that an attorney and a client having a sexual relationship could cause some personal conflicts that could affect representation," Ms. Prewitt answered, "That's what the rules say, that that's not permitted." Ms. Prewitt admitted she knew that a sexual relationship could cause conflicts in her representation of Mr. Tucker. Thus, she had an obligation under Rule 1.7(b) to explain that to Mr. Tucker and obtain in writing his informed consent to the representation. *See Robinson*, 209 A.3d at 575. The hearing panel's finding that her failure to do so violated Rule 1.7(b) was not arbitrary or capricious and is supported by substantial and material evidence.

Ms. Prewitt next asserts that she did not have to obtain a written waiver of the concurrent conflict of interest from Mr. Tucker because he was "just as aware of the status of his relationship with Ms. Prewitt as she was." But this is not the standard. Under Rule 1.7(b), Ms. Prewitt could represent Mr. Tucker when there was a concurrent conflict of interest if she "reasonably believe[d] that [she would] be able to provide competent and diligent representation" and Mr. Tucker gave "informed consent, confirmed in writing." For Mr. Tucker to give informed consent, Ms. Prewitt had to advise him of the "relevant circumstances and of the material and reasonably foreseeable ways that the conflict could

have adverse effects" on his interests.[23] Tenn. Sup. Ct. R. 8, RPC 1.7(b)(1), (4), cmt. 18; *see also Vogel*, 482 S.W.3d at 533 (holding that a lawyer violated Rule 1.7 by failing to explain to his client "the potential impact a sexual relationship between them could have on the attorney-client relationship" and failing to obtain her "informed consent to such a relationship"). Ms. Prewitt tries to distinguish *Vogel* by arguing that her personal relationship with Mr. Tucker was not the problem—the conflict of interest arose only after their personal relationship ended. But that merely begs the question. A conflict caused by the end of a personal relationship is one foreseeable consequence of carrying on such a relationship with a client. *See Zelotes*, 98 A.3d at 858 (noting the risk that the personal relationship might end, thus "bringing into question the future level of competency, diligence and detachment of the [lawyer]"). Additionally, the testimony of both Mr. Tucker and Ms. Prewitt shows that their personal relationship was an issue throughout the representation. Mr. Tucker's knowledge of their personal relationship does not mean he knew about the potential harm that it could have on the attorney-client relationship, and thus the reason for Rule 1.7(b)'s informed consent requirement.

The hearing panel also found that Ms. Prewitt violated Rule 1.7 by asserting a lien on the case, which put her own interests above Mr. Tucker's. Ms. Prewitt argues the Board did not show that she could not assert an attorney lien after withdrawal or that she asserted unreasonable time or billable amounts. The Board agrees that an attorney is allowed to assert a reasonable lien for work performed before the attorney withdraws from the case. But the Board presented evidence that the $121,750 lien Ms. Prewitt asserted was unreasonable; the lien hindered Mr. Tucker's ability to retain another attorney; and although she later reconsidered, Ms. Prewitt agreed to release the lien only after Mr. Tucker promised her half of his recovery in the personal injury lawsuit. Ms. Prewitt's actions regarding the lien establish that she put her financial interests ahead of Mr. Tucker's interests. *See, e.g.*, *Deseret First Fed. Credit Union v. Parkin*, 339 P.3d 471, 476 (Utah Ct. App. 2014) (noting that "[a]n attorney . . . may not put his or her own interests ahead of the client's" and holding that a lawyer's "prioritization of his interest in his fee" over the client's desire to settle a case was a conflict of interest under Utah Rule of Professional Conduct 1.7(a)).[24] The hearing panel's finding that Ms. Prewitt put her personal interest in

---

[23] Comment 18 explains that "[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. *See* RPC 1.0(e) (definition of informed consent)." Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. 18. Rule 1.0(e) defines informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Tenn. Sup. Ct. R. 8, RPC 1.0(e).

[24] Utah Rule of Professional Conduct 1.7(a) is identical to Tennessee Rule of Professional Conduct 1.7(a).

asserting her lien ahead of Mr. Tucker's ability to find a new attorney was not arbitrary or capricious and is supported by substantial and material evidence.

Ms. Prewitt also challenges the hearing panel's finding that she violated Rule 1.7 by advising Mr. Tucker to file a personal injury lawsuit rather than a claim for workers' compensation. Since we have already found that there is substantial and material evidence to support the other violations of Rule 1.7, the issue of Ms. Prewitt's advice to Mr. Tucker about a workers' compensation claim is pretermitted.

*Violation of Rule 1.16 (Declining or Terminating Representation)*

The hearing panel determined that Ms. Prewitt violated Rule 1.16[25] when she withdrew from Mr. Tucker's case because her withdrawal could not be accomplished without a material adverse effect on the client's interest. This finding was based on Ms. Prewitt's delay in seeking to withdraw; the fact that summary judgment motions were pending and Ms. Prewitt did not inform future counsel about them; and her assertion of a substantial lien that could deter another lawyer from taking the case. The hearing panel also noted that Ms. Prewitt did not provide Mr. Tucker with a copy of the motion to withdraw, that she failed to inform him of the possible impact her withdrawal would have on the case, and that the timing of her withdrawal failed to give Mr. Tucker adequate time to hire other counsel.

Ms. Prewitt argues the hearing panel erred in concluding that her withdrawal from the case could not be accomplished without material adverse effect on the client, and thus was a violation of Rule 1.16. *See* Tenn. Sup. Ct. R. 8, RPC 1.16(b)(1). She points out that she withdrew for "good cause" which is allowed under Rule 1.16(b)(7). Tenn. Sup. Ct. R. 8, RPC 1.16(b)(7). Even so, Rule 1.16 imposes additional requirements on a lawyer who withdraws from a case. The lawyer must, "to the extent reasonably practicable, take steps to protect the client's interests." Tenn. Sup. Ct. R. 8, RPC 1.16(d). This may include "(1) giving reasonable notice to the client; (2) allowing time for the employment of other

---

[25] A lawyer who . . . withdraws from representation of a client[] shall, to the extent reasonably practicable, take steps to protect the client's interests. Depending on the circumstances, protecting the client's interests may include: (1) giving reasonable notice to the client; (2) allowing time for the employment of other counsel; (3) cooperating with any successor counsel engaged by the client; (4) promptly surrendering papers and property to which the client is entitled and any work product prepared by the lawyer for the client and for which the lawyer has been compensated; (5) promptly surrendering any other work product prepared by the lawyer for the client, provided, however, that the lawyer may retain such work product to the extent permitted by other law but only if the retention of the work product will not have a materially adverse [e]ffect on the client with respect to the subject matter of the representation; and (6) promptly refunding any advance payment of fees that have not been earned or expenses that have not been incurred.

Tenn. Sup. Ct. R. 8, RPC 1.16(d).

counsel; (3) cooperating with any successor counsel engaged by the client; (4) promptly surrendering papers and property to which the client is entitled . . . ." *Id.* After withdrawal, "a lawyer must take all reasonable steps to mitigate the consequences to the client." Tenn. Sup. Ct. R. 8, RPC 1.16 cmt. 9.

Even if Ms. Prewitt had good cause under Rule 1.16(b)(7) to withdraw, she violated Rule 1.16(d) when she did not give reasonable notice to her client. The timing of her motion to withdraw—after summary judgment motions had been pending for a month and were set for hearing—did not allow adequate time for the employment of new counsel. The Board presented evidence that the lien Ms. Prewitt placed on the case was unreasonable, which further hindered Mr. Tucker's ability to retain new counsel. Additionally, Ms. Prewitt failed to cooperate with Mr. Tucker's subsequent attorney when she did not tell him about the pending summary judgment motions.[26] Ms. Prewitt's conduct did not show any effort to mitigate the consequences of her withdrawal.

The hearing panel's finding that Ms. Prewitt violated Rule 1.16 was not arbitrary or capricious and is supported by substantial and material evidence.

### *Violation of Rule 8.4 (Misconduct)*

Finally, the hearing panel found that Ms. Prewitt violated Rule 8.4(a)[27] based on her violation of other Rules of Professional Conduct. Because the hearing panel correctly found that Ms. Prewitt violated certain Rules of Professional Conduct, the panel's finding that she violated Rule 8.4(a) was not arbitrary or capricious and is supported by substantial and material evidence.

### *Challenge to Discipline Imposed*

Ms. Prewitt contends that the discipline imposed by the hearing panel—a thirty-day suspension and, as a condition of her reinstatement, she engage a practice monitor for six months and complete ten additional hours of ethics continuing legal education—was arbitrary and capricious. She primarily argues no sanction should be imposed because she did not violate any Rules of Professional Conduct, and even if she had, the sanction was excessive.

---

[26] Ms. Prewitt claims she did not have to cooperate with Mr. Tucker's new attorney because, when she spoke to the attorney, he had not yet been "engaged" but was still screening the case to decide whether he would take it. Black's Law Dictionary defines "engage" as "[t]o employ or involve oneself; to take part in; to embark on." *Engage*, Black's Law Dictionary (11th ed. 2019). The new attorney was involved in the case when he spoke with Ms. Prewitt as part of screening the case.

[27] "It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct . . . ." Tenn. Sup. Ct. R. 8, RPC 8.4(a).

The hearing panel relied on ABA Standards for Imposing Lawyer Sanctions 4.32 and 4.42 in imposing the thirty-day suspension. The hearing panel found that Ms. Prewitt's failure to recognize and disclose the conflict of interest and its potential consequences injured Mr. Tucker when she abruptly withdrew from the case, forcing him to go through a "very tumultuous" process to retain another lawyer. The hearing panel also found that Ms. Prewitt caused potential injury to Mr. Tucker when she failed to make proper expert disclosures and when she failed to advise him to file a claim for workers' compensation. The hearing panel considered Ms. Prewitt's refusal to acknowledge the wrongfulness of her conduct as an aggravating factor and her inexperience in the practice of law as a mitigating factor.

Under Standard 4.32, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."

Ms. Prewitt claims there was no proof that she knew her personal relationship with Mr. Tucker presented a concurrent conflict of interest. But there was proof. Ms. Prewitt testified that she was "familiar with the rules" and that the rules say that a sexual relationship with a client is "not permitted." She also argues she "could hardly have been expected to know she was supposed to 'disclose' to Mr. Tucker the circumstances of their own relationship absent clearer guidance from the rules." Rule 1.7 did not require Ms. Prewitt to disclose to Mr. Tucker the circumstances of their own relationship, but it did require her to tell him about the potential risks of her representing him and "reasonably available alternatives" to her representation. Tenn. Sup. Ct. R. 8, RPC 1.0(e), 1.7 cmt. 20. Ms. Prewitt's failure to obtain Mr. Tucker's informed consent violated Rule 1.7(b) and injured Mr. Tucker when, after their personal relationship ended, she withdrew from his case without taking any steps to address the pending summary judgment motions.

Also, under Standard 4.42, "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect [sic] injury or potential injury to a client." Ms. Prewitt contends the hearing panel erred when it found that her failure to provide appropriate expert disclosures caused potential injury to Mr. Tucker. She asserts that there was no evidence the outcome of Mr. Tucker's case potentially would have been different had his security expert—the only expert witness on the issue of liability—not been excluded. Proof that the outcome would have been different would be proof of actual injury. But the exclusion of the only expert witness on liability is proof of potential injury, no matter if it ultimately would have changed the circuit court's ruling on summary judgment.

Having considered Ms. Prewitt's conduct under these ABA Standards, we turn next to the aggravating and mitigating factors. We agree with the hearing panel's determination

that Ms. Prewitt's refusal to admit the wrongfulness of her conduct is an aggravating factor and that her inexperience in the practice of law is a mitigating factor.

Finally, we review the facts and circumstances of this case with sanctions imposed in similar cases. *In re Sitton*, 618 S.W.3d 288, 305 (Tenn. 2021) (quoting *In re Cope*, 549 S.W.3d 71, 74 (Tenn. 2018)). The Board points to *Mabry v. Board of Professional Responsibility*, 458 S.W.3d 900 (Tenn. 2014), as an example of a comparable case in which an attorney violated Rules 1.3 (Diligence) and 8.4 (Misconduct) by failing to dismiss a claim that had become moot, resulting in a monetary sanction under Tennessee Rule of Civil Procedure 11. *See id.* at 904. The Court, after considering five aggravating factors and three mitigating factors,[28] upheld a forty-five-day suspension. *Id.* at 911. The Board also compares this case to *Reguli*, arguing that this Court affirmed a more severe sanction than a thirty-day suspension for similar misconduct. But *Reguli* did not involve similar misconduct or similar sanctions. In *Reguli*, there were three separate Board complaints, and the hearing panel found violations of Rules 1.4 (Communication), 1.5 (Fees), 1.16 (Declining or Terminating Representation), 7.4 (Communication of Fields of Practice and Specialization), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct). 489 S.W.3d at 413. The misconduct in *Reguli* included the lawyer's failure to refund the unused balance of a client's retainer, filing an order with a trial court that did not accurately represent the court's ruling, and misrepresentations on her law office's website. *Id.* at 413–15. The Court upheld the sanction imposed by the hearing panel—suspension from the practice of law for eleven months and twenty-nine days, all to be served on probation on the condition that the lawyer pay restitution for the unearned portion of the retainer and submit to the supervision of a probation monitor, as well as any monitoring that the Tennessee Lawyer Assistance Program considered necessary after an evaluation. *Id.* at 426.

We find that *Maddux v. Board of Professional Responsibility*, 288 S.W.3d 340 (Tenn. 2009), is more comparable to this case. In *Maddux*, the Court held that a five-month suspension was the appropriate sanction for a lawyer who had violated Rules 1.1 (Diligence), 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4 (Communication), 1.8 (Conflict of Interest: Current Clients; Specific Rules), and 8.4 (Misconduct). *Id.* at 347, 349. The lawyer's misconduct included failing to investigate his clients' personal injury case, failing to communicate with them, and misrepresenting why their case was not progressing (after he failed to file the complaint within the statute of limitations) in a "continuing pattern of neglect and deception." *Id.* at 349. The Court noted as aggravating factors the vulnerability of the elderly clients, the lawyer's substantial experience in the practice of law, and the lawyer's failure to timely

---

[28] Aggravating factors were the attorney's "pattern of misconduct, his refusal to acknowledge the wrongful nature of his conduct, his substantial experience in the practice of law, and his seven prior disciplinary offenses." *Mabry*, 458 S.W.3d at 906. Mitigating factors were the attorney's "disclosure to the Board, his cooperative attitude," and the fact that he had paid $5,000 as a Rule 11 sanction. *Id.*

respond to the Board complaint and the petition for discipline filed against him. *Id.* The lawyer's remorse was a mitigating factor. *Id.*

Ms. Prewitt's thirty-day suspension is the minimum suspension the hearing panel could have imposed. Under Tennessee Supreme Court Rule 9, section 12.2(a)(2), "[n]o suspension shall be ordered for a specific period less than thirty days or in excess of ten years." Thus, we cannot conclude that the hearing panel abused its discretion by imposing the minimum suspension allowed. *See Hanzelik v. Bd. of Pro. Resp.*, 380 S.W.3d 669, 682 (Tenn. 2012) (finding that a forty-five-day suspension was not an abuse of discretion because it was "at the low end" of the spectrum of allowable suspension periods).

The hearing panel also required Ms. Prewitt to engage a practice monitor. The record shows that Ms. Prewitt had a fundamental misunderstanding of the procedure for disclosing expert witnesses, and she apparently did not review the applicable Tennessee Rules of Civil Procedure. Even at the disciplinary hearing, Ms. Prewitt maintained that she did not know why only two of her experts had been excluded and did not recognize the deficiencies in the disclosures she had provided. Thus, it is appropriate to require a practice monitor to ensure Ms. Prewitt reviews and complies with the procedural requirements of the cases she handles. *See Green v. Bd. of Pro. Resp.*, 567 S.W.3d 700, 717 (Tenn. 2019) (holding practice monitor requirement "entirely appropriate" given disciplined attorney's "history of failing to communicate adequately with clients and failing to manage his law practice well").

Finally, Ms. Prewitt failed to recognize the concurrent conflict of interest presented by her on-again-off-again romantic relationship with Mr. Tucker and failed to consult the Rules of Professional Conduct even though she admitted to knowing that a sexual relationship with a client was "not permitted." These failures show a need for Ms. Prewitt to undergo more training in legal ethics before she resumes the practice of law. *See Sitton*, 618 S.W.3d at 308 (affirming the requirement of nine hours of continuing legal education in ethics as a condition of reinstatement); *Walwyn v. Bd. of Pro. Resp.*, 481 S.W.3d 151, 162 (Tenn. 2015) (upholding sanction that included six hours of continuing legal education on "client relations, the management of a law practice, and/or the Rules of Professional Conduct"). The discipline imposed on Ms. Prewitt by the hearing panel was not arbitrary or capricious and is supported by substantial and material evidence.

*Challenge to Panel Member's Conflict of Interest*

Ms. Prewitt objected to the Board's application for costs, asserting that the disciplinary hearing was improperly conducted. She claimed one of the panel members had a conflict of interest because he was employed by a law firm representing the defendant in

an unrelated civil action in which Ms. Prewitt was the plaintiff.[29] She provided no further details and did not identify the hearing panel member who allegedly had a conflict, but merely stated that she intended to raise this issue, among others, on appeal. The hearing panel entered an order giving Ms. Prewitt fourteen days to support the claimed conflict, to disclose when she learned about it, and to submit a brief with legal authorities supporting the relief she was requesting. The order also stated that, if Ms. Prewitt did not submit her filings within the prescribed fourteen days, the hearing panel would rule on the record before it. Ms. Prewitt failed to submit anything in response to the hearing panel's order.

The trial court held that Ms. Prewitt had waived this issue by not litigating it before the hearing panel. *See Reguli*, 489 S.W.3d at 426. Ms. Prewitt argues that Rule 9, section 33.1(b), "is distinct from traditional appellate procedure, where issues not raised below cannot be raised for the first time on appeal." Section 33.1(b) authorizes the trial court to consider proof outside the hearing panel transcript and findings if a party alleges there were irregularities in the procedure before the hearing panel. *See* Tenn. Sup. Ct. R. 9, § 33.1(b). Ms. Prewitt claims she understood section 33.1(b) to mean the alleged conflict of interest was a procedural issue, and she could raise it on appeal rather than to the hearing panel. She also argues that she did not think the hearing panel would treat her fairly because the panel member heard the case even though he was aware of the conflict and because the panel placed on her the burden to prove the conflict. We need not decide if the alleged conflict of interest was a procedural irregularity that could be raised for the first time on appeal because Ms. Prewitt raised the issue to the hearing panel. The panel gave her the opportunity to litigate the matter, but she abandoned it and any opportunity for the panel to address the issue. Her argument that she did not think the panel would rule in her favor is unavailing. Thus, Ms. Prewitt waived the issue.

*Challenge to Assessment of Costs*

Finally, Ms. Prewitt asserts that the assessment of costs by the hearing panel and the trial court was "an illegal violation of public policy." Ms. Prewitt did not make this argument to the hearing panel, and for that reason the trial court held that she had waived the issue on appeal. Ms. Prewitt contends the trial court erred because the Board did not assert in its brief in the trial court that Ms. Prewitt had waived this argument. Ms. Prewitt also contends this issue is an irregularity of procedure that Rule 9, section 33.1(b), allows her to raise for the first time on appeal to the trial court. Ms. Prewitt's argument that the assessment of costs against lawyers in all disciplinary proceedings is illegal is a substantive

---

[29] This was all the information Ms. Prewitt included in her response to the Board's application for costs. The record shows that in February 2020, Ms. Prewitt sued St. Thomas Health for the unauthorized disclosure of her personal medical records. The attorney for St. Thomas Health worked for the same law firm as a member of the hearing panel.

legal issue. It does not constitute a claim of a procedural irregularity before the hearing panel as contemplated by Rule 9, section 33.1(b).[30] Thus, the trial court did not err.

Ms. Prewitt further argues that even if the Court finds waiver of this issue in the trial court, she did not waive the issue in this Court because she raised in her brief that the assessment of costs both by the hearing panel and by the trial court was an "illegal violation of public policy." Ms. Prewitt's response in opposition to the Board's application for costs in the trial court, unlike her response to the Board's application in the hearing panel, raises this argument. Since this is the first review of the trial court's order assessing costs,[31] we will address the merits of Ms. Prewitt's claim that the assessment of costs against her violated public policy.

Ms. Prewitt complains that the rule permitting assessment of costs is one-sided because an attorney cannot recover costs or fees from the Board after successfully defending against disciplinary charges.[32] She compares an attorney's agreement to be governed by the Tennessee Supreme Court Rules to an unconscionable contract in which the attorney has no meaningful choice. *See Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) ("An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice."). But this analogy does not apply.

Holding a license to practice law in Tennessee is a privilege. *Hornbeck v. Bd. of Pro. Resp.*, 545 S.W.3d 386, 396 (Tenn. 2018) (quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 618 (Tenn. 2010)). "It is the duty of every recipient of that privilege to act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." *Hornbeck*, 545 S.W.3d at 396 (quoting Tenn. Sup. Ct. R. 9, § 1). This Court has recognized that it is equitable to shift the financial burden of attorney discipline, which is "a costly endeavor," from the attorneys who comply with the Rules of Professional Conduct to those who do not. *Moncier v. Bd. of Pro. Resp.*, 406 S.W.3d 139, 150 (Tenn. 2013). This financial burden shifting also serves to deter other attorneys from violating the rules governing their profession. *Id.* Tennessee Supreme Court Rule 9, section 31.3, authorizes the taxing of costs only if the formal disciplinary proceeding results in "a judgment of disbarment,

---

[30] "The review shall be on the transcript of the evidence before the hearing panel and its findings and judgment. If allegations of irregularities in the procedure before the hearing panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations." Tenn. Sup. Ct. R. 9, § 33.1(b).

[31] *See* Tenn. Sup. Ct. R. 9, § 31.3(c) (setting forth the procedure for review by this Court of an order assessing costs from disciplinary proceedings before the trial court).

[32] "Attorneys successfully defending some or all disciplinary charges filed by the Board may not recover attorney's fees or costs from the Board." Tenn. Sup. Ct. R. 9, § 31.3(g).

- 24 -

suspension, public censure, temporary suspension, disability inactive status, reinstatement, or denial of reinstatement." Tenn. Sup. Ct. R. 9, § 31.3(a). The disciplinary proceedings against Ms. Prewitt led to suspension, and therefore the hearing panel and the trial court appropriately assessed the costs of the disciplinary proceedings to Ms. Prewitt under Tennessee Supreme Court Rule 9, section 31.3.

## CONCLUSION

We affirm the decision of the hearing panel and the judgment of the trial court that Ms. Prewitt violated Rules 1.1, 1.3, 1.7, 1.16, and 8.4(a) in her representation of Mr. Tucker. We hold that Ms. Prewitt waived the issue of an alleged conflict of interest of a hearing panel member and that the assessment of costs by both the hearing panel and the trial court was proper.

It is, therefore, ordered that Ms. Prewitt is suspended from the practice of law for thirty days, and as a condition of her reinstatement must complete ten additional hours of continuing legal education in ethics and engage a practice monitor for six months after her reinstatement. We tax the costs of this appeal to Candes Vonniest Prewitt, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE